Carter v. Gibson.

## J. M. Carter, appellant, v. B. A. Gibson, appellee.

[Filed April 8, 1890.]

1. **Trusts:** Consideration: Judicial Sales. One A, being a judgment creditor of B to a large amount, and being possessed of mortgage and judgment liens upon his land, in view of a judicial sale of such lands soon to take place to satisfy said liens, entered into an agreement in writing with B that in case he purchased said lands at said sale he would "proceed to sell the lots * * * and receive the proceeds of such sales until such time as he shall have received back the amount of said judgment and costs, and also the amount of all prior liens which he shall have to pay" (specifying certain debts and judgments), and "when all of said sums shall have been received by said A," etc., "he shall turn over to said B any surplus he may receive from the sale of said lots and lands" and convey the same again to B. *Held*, First, that as A in pursuance of said contract had become the purchaser of the lands to satisfy the various liens stated, he took the lands charged with the trust and must account to B; Second, that there was a sufficient consideration for the contract by reason of A exercising acts of ownership over the property before the sale and confirmation thereof, and also because the promise was calculated to cause B and his friends to relax their efforts to have the property sold at a high price and thus prevented competition.

2. ———: ———: ———. Where the owner of real estate and the proposed purchaser at a judicial sale of such real estate enter into a contract that the title, when acquired by such purchaser, shall be held in trust for the payment of the judgment and mortgage liens thereon, and, when they are satisfied, the remainder of such real estate, or the proceeds thereof, shall belong to and be reconveyed to the debtor, and in pursuance of such contract such proposed purchaser acquires the title at such sale, it will be sufficient, under sec. 3, ch. 32, Comp. Stats., to create a trust estate.

3. ———: Suit for Accounting: Costs. Where the trust is denied, an action to establish the trust and for an accounting may be maintained even if it should appear on the trial that the debts for which the trust was created had not been fully paid. In such case the court may apportion the costs as under the circumstances may be deemed just.

Carter v. Gibson.

APPEAL from the district court for Cass county.  Heard below before CHAPMAN, J.

*H. D. Travis, J. B. Strode,* and *A. N. Sullivan,* for appellant:

The written agreement is a declaration of trust signed by Carter as settlor, and by Gibson as trustee. (1 Perry, Trusts, sec. 260; 1 Lewin, Trusts, [8th Ed.], 200; 2 Story, Eq. Jur., sec. 964; *Field v. Arrowsmith,* 3 Humph. [Tenn.], 442; *Flint v. Clinton,* 12 N. H., 432.)  There is always a strong presumption of acceptance of a trust. (*Furman v. Fisher,* 4 Coldw. [Tenn.], 626.)  The instrument constituted an express, executory trust.  (2 Story's Equity, sec. 980; *Massey v. Huntington,* 118 Ill., 80; *Buchanan v. Howard,* 3 Tenn. Ch., 200; *Ellison v. Ellison,* 6 Ves. [Eng.], 656; *Donaldson v. Donaldson,* Kay [Eng.], 711, 719; *Reed v. O'Brien,* 7 Beav. [Eng.], 32; *Williams v. Williams,* 8 Bush. [Ky.], 241; *Stone v. Hackett,* 12 Gray [Mass.], 232.)  No consideration was necessary to raise the trust, but even had there been, the benefit accruing to Gibson by being able to sell the lots during the summer of 1887 was a sufficient consideration. (*Currie v. Misa,* L. R., 10 Exch., 162; Bishop, Contracts, secs. 38, 61, notes; *Flannagan v. Kilcome,* 58 N. H., 443; *McRarey v. Huff,* 32 Ga., 684.)  A further consideration is found in the fact that Gibson was enabled to bid in the land at sheriff's sale for a lower price (*Brown v. Lynch,* 1 Paige, Ch. [N. Y.], 147; *Roach v. Hudson,* 8 Bush. [Ky.], 410; *McRarey v. Huff,* 32 Ga., 681; *Paine v. Wilcox,* 16 Wis., 202; *Onson v. Cown,* 22 Wis., 329; *Lillard v. Casey,* 2 Bibb. [Ky.], 459; *Peck v. Baldwin,* 1 Root [Conn.], 455); and that Carter, relying on the contract, made no provision to bid (*Sandfos v. Jones,* 35 Cal., 482; *Rives v. Lawrence,* 41 Ga., 283; *Price v. Reeves,* 38 Cal., 459; *Ryan v. Dox,* 34 N. Y., 307; *Judd v. Mosely,* 30 Ia., 423;

1 Perry, Trusts, sec. 95). Having accepted the trust, Gibson could not renounce it merely by his own act. (Comp. Stats., ch. 73, sec. 46; Perry, Trusts, sec. 274; *Webster v. Vandeventer*, 6 Gray [Mass.], 428; *Thacker v. Candee*, 3 Keyes [N. Y.], 157.)

*E. H. Wooley,* and *Beeson & Root, contra:*

Whatever avoids a deed is equally fatal to a declaration of trust. (*Tatge v. Tatge*, 25 N. W. Rep. [Minn.], 596; *Graham v. Long*, 65 Pa. St., 383.) This instrument is void for want of mutuality. (*Stoutenburgh v. Tompkins*, 9 N. J. Eq., 332; *Pa., Del. & Md. Co. v. Dandridge*, 8 Gill & J. [Md.], 248; *Anderson v. Green*, 23 Am. Dec., 417, and note; *Lester v. Jewett*, 12 Barb. [N. Y.], 502; *Smith v. Reynolds*, 12 Reporter, 577.) In case of a trust, no interest passes without a consideration. (Sheppard's Touchstone, 510; 2 Blackstone's Com., 330; Bacon's Abridgement, vol. 7, 96–7; Coke upon Littleton, vol. 2, 680; Willard's Eq. Jur., 412; *Antrobus v. Smith*, 12 Vesey [Eng.], 39; *Lowry v. McGee*, 3 Head [Tenn.], 269; *Billings v. Filley*, 21 Neb., 524; *Kan. Mfg. Co. v. Gandy*, 11 Id., 448; *Shackelford v. Handley*, 10 Am. Dec., 760; *Minturn v. Seymour*, 4 Johns. Ch. [N. Y.], 497; *Burling v. King*, 66 Barb. [N. Y.], 633; Lewin on Trusts, 80*; Adams, Equity, sec. 77*; *Seymour v. Delaney*, 3 Cow. [N. Y.], 445 [S. C., 15 Am. Dec., 270, and note to case].) Money received on a debt past due would be no consideration. (*Wattes v. Frenche*, 19 N. J. Eq., 407; *State, ex rel. Kinseller, v. Davenport*, 12 Ia., 244; *Turnbull v. Brock*, 31 O. St., 649; *Pemberton v. Hoosier*, 1 Kan., 116.) The intention of the settlor to divest himself of the legal title must be consummated or courts will not enforce the trust. (Perry, Trusts, sec. 100; *Henderson's Adm'r v. Henderson*, 21 Mo., 382; Lewin, Trusts, *69, 70; *Garrard v. Lord Laudervale*, 2 Russ. & M. [Eng.], 452; *Meek v. Kittlewell*, 1 Hare, 469; *Dillon v. Coppen*, 4 Myl. & Craig, 447.)

MAXWELL, J.

This action was brought by the plaintiff against the defendant to establish a trust in certain real estate and for an accounting upon the following contract:

" This agreement, made and entered into this 13th day of May, 1887, between B. A. Gibson and J. M. Carter, witnesseth:

" That whereas said B. A. Gibson is the owner of a certain judgment rendered in foreclosure proceedings in the district court of Cass county, Nebraska, in an action pending in said court wherein Beardsley & Clark, successors to Beardsley & Davis, were plaintiffs, and J. M. Carter and Eliza Carter were defendants, and the said B. A. Gibson now desires to sell the lands upon which said judgment is a lien, and the said J. M. Carter desires to have an opportunity to redeem said land or some portion thereof: Now, therefore, it is mutually agreed between said parties that if the said B. A. Gibson shall have to bid said land in at sheriff's sale, he, the said Gibson, shall proceed to sell the lots in the addition known as Carter's addition to Weeping Water, and shall receive the proceeds of such sales until such time as he shall have received back the amount of said judgment and costs, and also the amount of all other prior liens which he shall have to pay, also the further sum of $1,700 and interest, the amount of a certain mortgage given by said Carter to Francis N. Gibson, controlled by B. A. Gibson as his agent, also a balance due on a certain other mortgage for $3,800 and interest, given by said Carter to Gibson, together with the expenses and costs incurred, and other prior liens he may be required to pay, when all of said sums shall have been received by said B. A. Gibson in cash or in notes, the proceeds of sale or otherwise paid by said Carter, then said Gibson shall turn over to said J. M. Carter any surplus he

may receive from the sale of said lots and lands and shall also deed to said J. M. Carter, or any person said Carter may direct, all of the remaining lots and lands which he shall have purchased at said sheriff's sale.

"It is further agreed that said B. A. Gibson shall confer with said Carter in making sales of said lots and lands, and shall not sell more lands or lots than will pay the sums aforesaid without the consent of the said Carter.

"It is further agreed that the said Gibson shall use his best endeavors to sell enough lots from date hereof, and at any time when said sums shall be reduced to $2,000, and said Carter shall so desire, said Gibson shall deed said remaining lots and lands to said Carter, or any other person said Carter shall direct, and accept a good and sufficient mortgage on sufficient real estate to secure the same.

"Witness our hands this 13th day of May, 1887.

"B. A. GIBSON.

"J. M. CARTER."

It is alleged in substance that in pursuance of said agreement the defendant purchased said lands and has sold and conveyed more than sufficient to satisfy the debts, judgments, and decrees specified, and that he conveyed a considerable portion thereof to a relative for a less price than it was worth. There are other allegations to which we need not refer.

The defendant in his answer admits that the plaintiff possessed the title to the land described in the petition, except ten acres near the center thereof, which was owned by one Coleman, and about three acres on one side which had previously been laid out for a public road; he also admits that the lands were incumbered by a certain mortgage and other liens; he also admits the contract "substantially as set forth in plaintiff's petition." He alleges that there were other judgments against the plaintiff of the aggregate amount of $1,500, which were liens on said land, and alleges that the plaintiff was indebted to the defendant on

May 17, 1887, in other large sums aggregating about $6,000, secured by chattel mortgage upon certain personal property of the reasonable value of $10,000 "as the plaintiff represented." "Plaintiff then told this defendant that he was owing large sums of money to divers persons in Cass county, Nebraska, that he was homesteading land in Cheyenne county, Nebraska, and that he was afraid that such creditors would obtain judgment against him in Cass county and would make them liens on his land in Cheyenne county, and he then implored defendant to sign the foregoing agreement in order that he might show it to his numerous creditors in Cass county, and make it appear to them that he still had an interest in the lands described in his petition, and thus delay them in enforcing their claims against him until such time as he should be able to acquire title to his land in Cheyenne county, and so incumber it and transfer it so as to place it beyond the reach of his creditors, and for the purpose of cutting out, defrauding, and delaying persons who already had judgments against him, and in that manner plaintiff induced defendant to sign said agreement.

"Defendant further avers that plaintiff never paid, or agreed to pay, him any consideration for signing said agreement, and defendant never received in any manner any consideration or benefit whatever from plaintiff, or any other person for him, for signing said agreement, and defendant never in any manner recognized the validity of or entered upon the execution of said agreement.

"That he afterwards caused said land to be regularly appraised, advertised, and sold under said judgment, that he was the highest bidder therefor, and it was on or about the 29th of June, 1887, sold to him by the sheriff of Cass county, Nebraska, for the sum of $8,000, a sum more than two-thirds of the appraised value of said land and much less than the liens thereon, and said sale was at the September, 1887, term of the district court of Cass county, Nebraska,

confirmed and deed ordered to be made for said land to this
defendant, which said deed was made, executed, and de-
livered to this defendant in due form; that at the time of
said sale and at no time, since, has there been paid to him
by the plaintiff, or any other person for him, any of the
incumbrances or debts of the plaintiff hereinbefore men-
tioned.

"Plaintiff had neglected to pay the taxes on said land
for the years 1883, 1884, 1885, and 1886, and the taxes
for the year 1887 were due and unpaid, and that said mort-
gage and this defendant's judgment lien, and the taxes due
and unpaid on said land amounted to about the sum of
$13,000, and that all of said land at the time was not
worth the sum of $9,000. Subsequently, to-wit, on or
about the 29th day of September, 1887, this defendant
sought to collect the debts owing this defendant by this
plaintiff secured by the chattel mortgages hereinbefore men-
tioned, and to foreclose the same, when this defendant
learned that plaintiff had fraudulently sold and disposed
of the greater part of such chattel property so mortgaged
to secure said indebtedness; that he had fraudulently, and
with the intention of cheating and defrauding this defend-
ant of his security, removed a part of said property to
Cheyenne county, Nebraska, and had disposed of the same
and placed it beyond the reach of this defendant, and that
this defendant then, with the plaintiff's consent, sold such of
said property so secured by chattel mortgage not so fraudu-
lently sold and disposed of and removed from the county
of Cass aforesaid, at public auction, and the proceeds of
said sale amounted to less than $1,000.

\*        \*        \*        \*        \*        \*        \*

"Defendant further answering avers that he has laid out
and expended a large sum of money, to-wit, about the sum
of $2,500, in building roads and buildings upon and im-
proving and advertising said property and in selling a part
of the same; that he has sold lands and lots therefrom

amounting to about $8,000; that he has obtained for same all said land so sold was worth; that there is due the plaintiff, and the owners of the liens on the said land mentioned in the plaintiff's petition from plaintiff about the sum of $9,000 over and above all sums paid, laid out, and expended by the defendant in improving, advertising, and selling said land, after applying all sums obtained from sales thereof to the payment of the same.

"Further answering defendant denies that he is in any manner liable to account to the plaintiff under the agreement set forth in plaintiff's petition, or under any other agreement, for any lands or lots sold by defendant."

There is a reply which need not be noticed.

The principal question presented by the pleadings is, Does the contract set out in the petition create Gibson a trustee for the plaintiff?

Here is a distinct agreement of a creditor interested in a number of the judgment and mortgage liens against the defendant's real estate, that if he purchases the land at sheriff's sale he will "proceed to sell the lots until such time as he shall have received back the amount of such judgment and costs and other liens mentioned.    *    *    *    Then said Gibson shall turn over to said Carter any surplus he may receive from the sale of said lots and lands, the remaining lots and lands which he shall have purchased at sheriff's sale," etc.

This agreement was made more than a month before the sale by the sheriff took place and evidently in view of it, and the defendant thereupon seems to have treated the property as under his control, and prior to the confirmation of the sale in September, 1887, sold and made deeds in his own name for a portion of the lots. This he had no right to do unless he was acting under the contract, as the plaintiff could but for the contract have redeemed the land at any time before the sale was confirmed. The defendant, therefore, must have made these sales and conveyances by

virtue of his contract with the defendant and thereby accepted its terms and conditions.

A trust, in its simplest elements, is a confidence reposed in one person who is termed trustee for the benefit of another, who is called the *cestui que trust;* and it is a confidence respecting property which is thus held . by the former for the benefit of the latter. (Willard, Eq. Jur., 186.)  The essential requisites of a valid trust are, first, a sufficient expression of an intention to create a trust; and, second, a definite beneficiary.  The statute, 29 Car., 2, C. 3, sec. 7, required all trusts in real estate to be manifested and proved by some writing signed by the party creating the trust, or by his last will.  Under this statute it has been held that it was not necessary that a trust should be declared by deed, but it would be sufficient if proved to exist in writing. (*Fisher v. Fields,* 10 Johns., 495 ; *Steere v. Steere,* 5 Johns., 1 ; *Scituate v. Hanover,* 16 Pick., 222 ; *Wright v. Douglass,* 7 N. Y., 564 ; *Kingsbury v. Burnside,* 58 Ill., 310 ; *Morse v. Morse,* 85 N. Y., 53.)

It is claimed on behalf of the defendant that the statute has changed the rule as above stated.  Sec. 3, chap. 32, Compiled Statutes, provides :

"No estate or interest in land, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, or surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same.

"Sec. 4. The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being ·extinguished by implication or operation of law."

The defendant contends that an instrument to be suffi-

cient to constitute a declaration of a trust in real estate must be such as to convey an interest in the land ; that the contract set out in the petition not being a conveyance and there being no mutuality in it, it is therefore void. The cases of *Tatge v. Tatge,* 25 N. W. Rep. [Minn.], 596, and *Graham v. Long,* 65 Pa. St., 383, are cited to support this proposition.

In the former case an unmarried man, who seemed to have wronged a woman under promise of marriage and fearing that an action for damages might be brought against him, conveyed his real estate to his mother, a married woman then living with her husband. A year later, the difficulty having been settled in some way, his mother reconveyed the land to him. The conveyance under the Minnesota statute was void because of the failure of the husband "to join with her" in making the same. As the husband refused to join with his wife in making the conveyance to the son, an action was brought to enforce the alleged trust and the court held, rightly we think, that the action would not lie ; that the deed from the mother being void as a deed, was also void when it was sought to establish a trust thereby; and this was substantially the holding of the court in the case cited from Pennsylvania. If, therefore, the instrument set out in the petition is not void, the cases cited have no application. Sec. 3 of the act above copied requires a conveyance by which a trust is created to be in writing and *subscribed* by the party creating the same. It is not required to be witnessed or acknowledged. Therefore it is not necessarily a deed, the requisites of which are prescribed by statute. Sec. 23 of the same chapter declares that "The term 'conveyance,' as used in this chapter, shall be construed to embrace every instrument in writing (except a last will and testament) whatever may be its form, and by whatever name it may be known in law, by which any estate or interest in lands is created, aliened, assigned, or surrendered."

This leaves the creation of a trust substantially as under the statute of 29 Car., 2, that any agreement or contract in writing made by a person having the power of disposal over real property, whereby such person agrees or directs that certain real estate shall be held or dealt with in a particular manner for the benefit of another, raises a trust. (Perry on Trusts, sec. 82, and cases cited.)

Here was a plain agreement made by the owner of the land, then heavily indebted, and one of his principal creditors, a proposed purchaser of the land. It is true the sale was not directly by the plaintiff to the defendant, and the reason of this is apparent. There were many judgments and other liens against the property which only a judicial sale could cut off and give a perfect title. The defendant was aware of this fact and entered into the contract in view of becoming the purchaser at the sale and thereby acquiring a title free from these liens. In effect he promised the plaintiff that if he was permitted to acquire a good title to the lands by a sale, he would hold the lands for his benefit, and, when the debts mentioned in the contract were paid, would reconvey to him. In pursuance of this contract he did acquire the title to said real estate, and he holds it as trustee for the plaintiff according to the terms of the agreement.

But it is contended that even if the instrument is valid to create a trust where there is a sufficient consideration, yet that in this case there was no consideration and that therefore it cannot be enforced.

The testimony is, that from the date of the agreement to the time of the confirmation of the sale the defendant exercised acts of ownership over the property and sold and conveyed some of the lots. This was a great advantage to him, and of itself is a sufficient consideration for the contract. In addition to this, it seems to have been generally known that the purchase in effect was for the benefit of the plaintiff after the payment of the debts named, and this

may reasonably be presumed to have deterred other bidders from attempting to purchase the property and prevented competition. (*Brown v. Lynch*, 1 Paige [N.Y.], 147; *Roach v. Hudson*, 8 Bush. [Ky.], 410; *McRarey v. Huff*, 32 Ga., 681; *Paine v. Wilcox*, 16 Wis., 202; *Onson v. Cown*, 22 Id., 329; *Lillard v. Casey*, 2 Bibb [Ky.], 459; *Peebles v. Reading*, 8 S. & R. [Pa.], 492; *Denton v. McKenzer*, 1 Des. [S. Car.], 289.) This advantage the defendant cannot avail himself of and then repudiate its effect. Contracts between a mortgagor and mortgagee, and between a debtor and his judgment creditor, promising an advantage to such debtor in case the creditor is permitted to purchase the property at a judicial sale then about to take place which are calculated to relax the vigilance of the debtor and his friends at the judicial sale, and prevent competition if creditors are not affected thereby, ordinarily will be enforced, and the plea of want of consideration cannot be entertained. The proposed purchaser, by making the proposition, evidently expected to gain an advantage thereby and his proposition being accepted, he must carry it out. No one can estimate the amount of benefit to the purchaser by such a proposition, when carried into effect, or injury to the debtor, if it can safely be ignored after the sale has taken place.

3. But it is said that the plaintiff was notified before the confirmation of the sale that the defendant did not intend to carry out the contract, and that he claimed the property as his own. The testimony on this point consists of the letter of an attorney who merely gives his individual opinion that from appearances he believed such to be the case. The defendant, nor any one for him, so far as the testimony shows, ever gave such notice, and even if he had it would have been unavailing. The rule is that when a trustee has entered upon the execution of the trust, he cannot afterwards free himself from the discharge of the same without the consent of the *cestui que trust* unless by an order of court. (*Cruger v. Holliday*, 11 Paige [N. Y.], 314;

*Shepherd v. McEvens,* 4 Johns. Ch. [N. Y.], 136; *Doyle v. Blake,* 2 Sch. & L. [Ir.], 245; *Lowrey v. Fulton,* 9 Sim. [Eng.], 123.) In *Shepherd v. McEvens, supra,* Chancellor Kent says: "I take this to be a clear and settled rule of this court." If this is a correct rule, of which there seems to be no doubt, the defendant, if he personally notified the plaintiff of his denial of the trust, would not thereby have been discharged.

The fourth objection is, that sufficient property has not been sold to satisfy the debts named in the contract. This question is one of fact to be determined from the evidence; and even if it is found that the amount realized from the sale was not sufficient to satisfy the debts named in full, it is probable that it could not defeat the action.

A large amount of land has been sold by the defendant, but the value of the same is to be determined from very conflicting evidence. There is no proof that the plaintiff intended to defraud his creditors by the contract in question, and that question need not be considered. A "substantial" copy of an alleged agreement made subsequent to the one which is the basis of this action, and the execution of which is denied, was introduced in evidence without sufficiently accounting for the original. But this error probably will be avoided hereafter.

There are no findings of fact in the case, as they were unnecessary in view of the holding of the court below, hence the cause will be remanded for findings and judgment. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.