JOHN T. HINTON v. GRIFFIN PRITCHARD et al.

*Real Estate—Declaring Trusts—Plaintiff and Defendant—Possession—Trustee for Another's Benefit—Account—Evidence—Admissions.*

1. In an action for the possession of certain lands, the defendant answered, alleging that the plaintiff, pursuant to previous understanding, purchased them for defendant, but took title, to be held in his own name until he could pay the purchase-money advanced, to which payment the rents were to be applied. Plaintiff went into possession and so continued for several years: *Held*, (1) that the defendant was entitled to have plaintiff declared a trustee to hold the lands for his benefit, to the extent of defendant's interest therein; (2) that the statute of limitations was no bar to defendant's action.

2. Conversations, before and at the time of the transaction between plaintiff and defendant, tending to show plaintiff's knowledge of his trust, are clearly admissible as evidence.

3. Plaintiff's admissions to third persons, subsequent to the transaction, tending to establish the trust, are admissible as evidence.

4. The plaintiff plead a docketed judgment, which was a valid and subsisting lien upon whatever interest defendant had in the lands: *Held*, that the Court erred in directing an account of this judgment and refusing to direct the payment of the same.

5. Discussion by MERRIMON, C. J., of the evidence necessary to establish a trust.

This was a CIVIL ACTION, tried at the Spring Term, 1890, of HERTFORD Superior Court, by *Whitaker, J.*

It is alleged in the complaint that the plaintiff is the owner in fee and entitled to the possession of the land therein specified; that the defendant is unlawfully in, and so withholds, the possession thereof from the plaintiff, and he demands judgment for possession thereof, for rents, &c.

The answer denies such allegations, and alleges, for defence, that at a sale of the land at the time and place specified, the defendant bought the same for the price of

$4,300, and of this sum at once paid $2,300; that he failed to pay the balance of $2,000 according to the terms of sale, and the land was afterwards sold to pay the balance; that the defendant applied to the plaintiff to aid him, which he consented to do, and "it was agreed and understood between the plaintiff and defendant that plaintiff should appear at the sale, to be had in the spring of the year 1879, buy the land and take title to himself, but the same was to be held as security for such sum as the plaintiff might be compelled to advance for the protection of the defendant's interest in the land."

8   That the plaintiff appeared at the sale referred to, and bid the sum of about $3,100, and, according to the agreement with the defendant, the title was made to the plaintiff. That the deed was made and received upon the express agreement and understanding between the plaintiff and the defendant that the same was only held as security for the said sum of $3,100, bid and advanced at the sale aforesaid, and upon the further understanding and agreement that the plaintiff would convey the said land to the defendant when the plaintiff should be repaid the amount of his said bid.

9. That after the said sale it was agreed between the plaintiff and the defendant that the plaintiff should receive the rents, and the plaintiff did so receive them from the time of the purchase in the year 1879 until the latter part of the year 1887, or the first part of the year 1888.

10. That the plaintiff received, or could have received, by exercising proper diligence, the sum of three hundred ($300) dollars per annum as rent from said farm for the nine years during which he received the rent.

11. That the plaintiff, by his negligence, has permitted the buildings to decay, and the land to go to waste generally; and by such negligent acts of plaintiff the said farm has depreciated in value to the amount of fifteen hundred dollars.

107—9

12. That the plaintiff has been paid every dollar of his said bid of $3,100; but, notwithstanding said payment, he refuses to execute to defendant a deed for the land, as he has agreed to do.

Wherefore, defendant prays judgment—

1. That an account be ordered between the parties.

2. That the plaintiff be directed and commanded by the Court to execute a deed in *fee-simple* to the defendant.

3. And for such other and further relief as to the Court may seem meet.

The defendant admits that the plaintiff had a mortgage on the land to secure a debt he owed the plaintiff at the time the latter bought it.

The plaintiff, in his reply, denied all the material allegations of the defence, and alleges that he purchased the land for himself, and not for the defendant in any sense; that he at once took possession and control of the land, and had possession of it for nine or ten years without objection, until the defendant took possession thereof wrongfully in 1888; that the defendant's claim is barred by the statute of limitations; that if it exists it is stale, and ought not to be enforced; that the contract was void, because not in writing; that at and before the time he purchased the land he had a mortgage upon the defendant's interest therein to secure a debt due to him from the defendant, which amounted, on the 13th of October, 1889, to $1,799.72; that he has a judgment against the defendant for $1,056.87, with interest on $952.88 at the rate of 8 per cent. *per annum*, from March 19th, 1888, and for costs, which judgment was duly docketed in the county of Hertford, where the land is situate; that, at all events, the defendant cannot be entitled to have title to the land until he shall have paid to the plaintiff the sum of money, and interest thereon, that he paid for the same, the mortgage debt and the sum of money due upon the judgment mentioned.

The Court submitted the following issues to the jury, who rendered their verdict upon the same as indicated at the end of each:

1. Is the plaintiff in this action trustee in the deed of trust referred to in the amended answer of date May, 1871, and was said deed of trust registered and unpaid at the time of sale at which plaintiff became purchaser? Answer— Yes.

2. Is the land described in the deed of trust the same sought to be recovered in this action? Answer—Yes.

3. Did the plaintiff agree with defendant, prior to the sale by commissioner, that he would purchase said land for the defendant and hold the same as alleged in the answer? Answer—Yes.

4. How long since said sale has the plaintiff at any time been in the continuous possession of the land described in the pleadings? Answer—Seven years and one month.

5. Has such possession been adverse or by agreement with the defendant? Answer—By agreement,

6. Is defendant's claim barred by the statute of limitations? Answer—No.

7. Is the said claim a stale one, as alleged in the reply? Answer—No.

8. What is the annual value of said land? Answer— Fifty dollars.

9. Did the plaintiff buy said land at a sale made under order of Court in the cause of defendant Pritchard against Askew, and under deed from Bagley, commissioner in that cause? Answer—Yes.

The case settled on appeal states that—

On the trial defendant, as a witness in his own behalf, was asked: "State if you ever had any agreement with the plaintiff in reference to the purchase of the land in controversy, and if so, what that agreement was?" The plaintiff objected to this question. The objection was overruled, and

the plaintiff excepted. The witness answered: "Yes, I had an agreement. I made an arrangement with Mr. Hinton to buy the land for me. Mr. Hinton agreed that he would buy the land for me; that I might take charge of the land and cut timber off it and apply the stumpage to the payment of the money advanced by him, and, if that was not sufficient, I could sell off certain portions of the land— enough to pay the debt; that I could have four or five years, or longer, to pay amount advanced by him; that in selling off the land, he would have to know that I was getting a fair price for it; that when the amount advanced by him and the mortgage debt due by me to him for $600 or $700 was paid he would convey the land to me; that the rents might go to the payment of these two debts." Plaintiff objected to the above answer. The objection was overruled, and he excepted.

This witness further testified: "The sale to which reference was made in said agreement was the sale that took place in May, 1879; the sale was by Bagley, Commissioner of Supreme Court in case of *Pritchard* v. *Askew*, the Pritchard being myself."

The witness was then asked: "Did you have an interest in this land at the time of the sale?" The plaintiff objected to this question. The objection was overruled, and the plaintiff excepted.

The witness answered: "I had an interest at the time John L. Hinton, the plaintiff, purchased at that sale." The witness was asked: "How did he purchase?" To this question the plaintiff objected. The objection was overruled, and the plaintiff excepted. The witness answered: "He purchased the land for me." The witness was asked: "Did you have any conversation with the plaintiff after the purchase of that land?" To which question the plaintiff objected. The objection was overruled, the plaintiff excepted and the witness answered: "Yes, plaintiff told me he had

bought the land as agreed upon; that I could go down and see Sumner, and make terms with him about staying there the balance of the year."

The witness further testified : "I relied upon the agreement made with plaintiff, and made no arrangement to get money to save the land from any other source." This answer was objected to by plaintiff, the objection overruled, and plaintiff excepted.

The witness further testified: "I think plaintiff paid for the land about $3,100; the value of the land at that time was $12,000 or $15,000; I took possession of the farm after the sale; I went to the farm and rented it out to Mr. Sumner; I could not state to whom Mr. Sumner paid rent; I gave him no directions about paying the rent to any one else; could not say how long Mr. Sumner remained there; after the sale I remained in possession of the land until January, 1880; I did not, during that period, reside upon the farm; the plaintiff has had possession of the farm since the sale for some time; don't know how long."

The witness was asked : "While the plaintiff Hinton was in possession of the farm, did he have conversation with you as to the way in which he held it?" To this question the plaintiff objected. The objection was overruled, the plaintiff excepted, and the witness answered : "He did. He told me I could move over there on the farm and cut the timber on it and pay the debts off; he said he had several applications, but would not sell any portion without my consent." To this answer the plaintiff objected. The objection was overruled, and the plaintiff excepted.

The witness further testified : "This conversation was in 1881; I had several conversations with plaintiff on same subject; the last one, in substance like the first, in 1885; I am in possession now; I took possession about January 1st, 1888, and have remained ever since; at the time I took pos-

session the land was vacant; my son, with my tenant, lives there."

On the cross-examination the witness, in answer to questions asked him by the plaintiff, testified: " The purchase was in May; I was present at that time; Mr. Shaw, who had bought at previous sale, was in possession, and his tenant remained until January 1st, 1880; that was the arrangement I made with Mr. Sumner; after January 1st, 1880, don't know who had possession till 1888, when I 'took possession; I first bought this land of John O. Askew, administrator of W. J. Perry, in 1863, for $4,300, on one and two years time; I was not present at the sale in January before the sale in May; the land was sold at that time and brought about $2,800; the last sale was at public auction; at the time of the sale I owed plaintiff about $600 or $700, secured by mortgage on this land; he agreed that if I would pay him this indebtedness, and the amount to be advanced by him in the purchase of the land, he would convey the land to me; no rate of interest was agreed on; in January, 1879, the first sale, the weather was too bad for travel; I tried to get to the sale, but was prevented by bad weather: the land is chiefly valuable for timber."

To none of the testimony of the witness on his cross-examination was there any objection by the plaintiff.

Several other witnesses were examined for the defendant, who each testified that he had a conversation with the plaintiff *subsequent* to the time the latter purchased the land, in which he admitted, more or less directly, that he purchased the land in question, and took a deed for the same at the instance of, and for the defendant, subsequently, as alleged by him. The plaintiff objected to all such evidence. The Court admitted the same, and the plaintiff excepted.

The Court adjudged that the plaintiff held the land in trust to secure the payment to him of the money he paid for the same, and also the mortgage debt mentioned. It directed

an account to be taken; that upon the payment of the money the plaintiff should convey the land to the defendant; that if the same was not paid within ninety days, commissioners appointed should sell the land and apply the proceeds of the sale to the payment of the debts so due, etc.; and also gave judgment that the plaintiff pay the costs, etc.

The plaintiff excepted to the judgment and appealed to this Court, assigning grounds of exception as follows:

"1. Upon the pleadings and findings, no parol trust ought to have been attached to the land in his hands, but he should be declared the absolute owner of the same free from any trusts.

"2. That if any trusts were declared, plaintiff ought not to be required to convey the legal title to defendant till he has settled in full what he owes the plaintiff, upon *all* the accounts set out in the pleadings.

"3. That all these matters ought to have been included in the reference ordered.

"4. That no cost should have been adjudged against plaintiff?"

*Mr. W. D. Pruden*, for plaintiff.
*Messrs. E. F. Aydlett* and *J. W. Albertson, Jr.*, for defendant.

MERRIMON, C. J.—after stating the facts: The defendant had purchased the land in controversy and paid a large part of the purchase-money, but did not get the title for it. Afterwards judgment was obtained against him for the balance of the purchase-money, and the land was sold to satisfy that judgment, and, at the sale thereof, the plaintiff purchased and took the title therefor. The defendant, however, alleges that the plaintiff, at the time of, and before, the sale, agreed, by parol, to aid him by purchasing the land for him, and taking the title to it to himself, and holding it in trust for the defendant, to be conveyed to him when, and as

soon afterwards, as he should pay the plaintiff the amount of money the latter paid for it, at the instance of the defendant, and that the plaintiff did purchase the land in pursuance of such agreement, charged with such trust in favor of the defendant. The plaintiff denies that he made any such or like agreement.

It is conceded that such a trust, when it exists, may be upheld and enforced, but it is contended that the evidence produced on the trial to prove its existence was incompetent, or, if competent, was insufficient in quantity and kind to establish it. The plaintiff, testifying in his own behalf, stated that the parol agreement was made substantially as alleged by him in the pleadings. The defendant was certainly an eligible witness to prove any pertinent fact that might be proven by parol evidence. It was material to prove the parol agreement, as alleged, and the testimony of the defendant was competent and pertinent for that purpose. The testimony of several witnesses as to admissions and declarations of the plaintiff, on numerous occasions after he purchased the land, in respect to the alleged agreement, was competent as corroboratory of the evidence of the defendant. But such evidence would not, of itself, be sufficient to establish the alleged trust. It should be supplemented and strengthened by pertinent facts and circumstances admitted or proven to exist *dehors* the deed for the land taken by the plaintiff, inconsistent with his purpose, to purchase the same exclusively for himself, and tending more or less strongly to show a purpose to create the trust. The trust is in derogation of what is expressed in the deed, and the burden is on the party asserting its existence to make it appear by certain, strong and convincing proof. The Court is slow to declare and establish such trust except upon the strongest pertinent proofs. It looks anxiously for facts and circumstances pointing to it, in addition to the simple evidence as to the agreement creating it. *Brown* v. *Carson*, Busb. Eq., 272; *Clement*

v. *Clement*, 1 Jones' Eq., 184; *Leggett* v. *Leggett*, 88 N. C., 108; *Williams* v. *Hodges*, 95 N. C., 32; *Smiley* v. *Pearce*, 98 N. C., 185; *McNair* v. *Pope*, 100 N. C., 404.

There were admissions in the pleadings and evidence other than that that went directly to prove the agreement, tending strongly to show that the plaintiff agreed to aid the defendant and purchase the land in trust, as alleged. The evidence, we think, was pertinent and sufficient, if the jury believed it. It was in evidence, and not controverted, so far as appears, that the defendant at first purchased the land for $4,300; that of this sum, he paid at once $2,800; that the plaintiff afterwards purchased it at the price of $3,097; that at the time of his purchase, it was worth from $12,000 to $15,000, and that at the time he had a mortgage of the defendant's interest in it to secure a debt due from him to the plaintiff for about $700, which debt and mortgage yet remain undischarged. Now, it would be most unreasonable to infer, and highly improbable, that the defendant would be content to lose the money he had paid for the land, and to allow the mortgage debt to remain undischarged, when the land, at the time the plaintiff purchased it, was worth four times what he paid for it! This is especially so, in view of the relation of the parties as mortgagor and mortgagee. And, moreover, it is scarcely probable that the plaintiff could, or would, be so unconscionable as to take the defendant's land at such a sacrifice. It appears that, shortly after the plaintiff bought the land, he took possession of it and held it for seven or eight years, and this might go to show that he bought it for himself; but this fact is shorn of its force by repeated admissions and declarations made to the defendant, and several other witnesses, at various times—some of them as late as 1885—to the effect that he held the land in trust for the defendant.

The defendant's cause of action is not barred by the statute of limitations, nor by the lapse of time. There was evidence

tending to prove that the plaintiff took and held possession of the land by agreement with the defendant, recognizing the latter's right, and the jury so found, within a short period before this, action was brought. The failure to close the trust for so long a while seems to have been by the mutual assent of the parties.

We are, therefore, of opinion that the several exceptions to evidence received on the trial are unfounded, and that the Court properly gave judgment declaring the trust in favor of the defendant. We think, however, it erred in refusing to embrace, in the order directing an account, the docketed judgment mentioned and specified in the pleadings in favor of the plaintiff and against the defendant, and refusing to direct the payment of the same. That judgment was a lien upon whatever interest the defendant had in the land, subject to the two prior liens of the plaintiff. The Court had jurisdiction of the parties to the judgment, the land upon which it was a lien; it was before the Court, and, so far as appears, there was no valid objection to it. There was no reason why the Court should not administer the plaintiff's right to have it paid, or direct that it share, in its order, the proceeds of the sale of the land. It was not essential that it should be enforced by the ordinary execution. The jurisdiction of the Court, as to it, was sufficient to enable it to enforce the lien. *Currie* v. *Clark*, 101 N. C., 321. The judgment appealed from must be so enlarged in its scope as embrace the judgment just mentioned and direct its payment, and the judgment, thus enlarged, must be affirmed. It is so ordered.      Affirmed.