In the Matter of the Accounting of RUFUS KING, as Executor of MARGARET KING, Deceased.

MOSES W. TAYLOR et al., as Executors of DYCKMAN ODELL, Appellants; RUFUS KING, Individually and as Executor, et al., Respondents.

Will — "gifts to a class" defined — provisions of a bequest to nephews and nieces of testator examined and held, that the surviving nephews and nieces take only their own shares and that the shares of the deceased nephews and nieces lapse.

A gift by will made to a class may be defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons. But if there is a bequest to certain persons *nominatim*, or so described as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses.

Testator devised the proceeds of certain real estate to the nephews and nieces of her late husband "who were living" at his death and by a subsequent clause disposed of her residuary estate. At the time the will was made and at the husband's death there were living nine of such nephews and nieces. Between the date of the will and the death of the testatrix five of such nephews and nieces died. *Held,* that the surviving nephews and nieces take only their own shares; that there was a lapse of the shares of the five who predeceased testatrix, and that their shares passed into the residuary estate.

*Matter of King,* 135 App. Div. 781, reversed.

(Submitted November 17, 1910; decided December 13, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 10, 1909, which affirmed a decree of the Orange County Surrogate's Court settling the accounts of Rufus King as executor of Margaret King, deceased.

One Margaret King died in July, 1906, leaving a last will and testament dated the 30th day of March, 1876, which was admitted to probate in the Surrogate's Court of Orange county on the 17th day of July, 1906. Letters testamentary

were thereupon issued to Rufus King who was nominated in the will as executor. In this will the testatrix, after sundry dispositions to next of kin, made the following provision for certain nephews and nieces of her deceased husband: "*Fourthly*. I give and devise to my executors, hereinafter named, my house and lot No. 138 Seventh Avenue, west side, third door below Twentieth street, New York City, in trust, to sell the same within eighteen months after my decease, either at public or private sale, for the best price they can obtain, and give to the purchaser or purchasers a good and sufficient deed therefor, and divide the entire proceeds of such sale equally between the nephews and nieces of my late husband, being the children of his brother, Rufus S. King, of New York, who were living at the death of my late husband, and the children also of his sister, Margaret M. Petty, of Orient, Long Island, share and share alike, to them and their heirs." This fourth paragraph is supplemented by a general residuary clause which reads as follows: "*Fifthly*. I give, devise and bequeath to my sister, Elizabeth Odell, all the rest, residue and remainder of my property of whatever kind and wherever situate, not herein otherwise disposed of, to her, her heirs and assigns. But, if she shall not survive me, then the said rest and residue to go to and belong to my next of kin, as the same would descend under the statute."

The will of the testatrix was made in March, 1867, and her husband died in November, 1866. At both of these dates there were living nine nephews and nieces of the deceased husband, four of whom were the children of Rufus S. King, a brother of the husband, and five of whom were the children of Margaret M. Petty, a sister of the husband. Between the date of the will and the death of the testatrix five of these nephews and nieces died, two of them being the children of said Rufus S. King, and three of them the children of said Margaret M. Petty, so that only four of these nephews and nieces survived the testatrix.

The first residuary legatee, Elizabeth Odell, a sister of the testatrix, predeceased the latter, and the will provided that

upon the happening of that event the residuary estate should go to the next of kin of the testatrix. Her only surviving next of kin was her brother Dyckman Odell, who has since died, and his estate is represented by his executors.

The matter in controversy is the division of the proceeds of the New York real estate described in the fourth clause of the will, and the question is, whether the four surviving nephews and nieces of the deceased husband of the testatrix take it all, or whether the shares of the five who predeceased the testatrix lapsed and fell into the residuary estate.

The surrogate decided "That it was the intention of the said Margaret King to give the entire proceeds of the sale of the premises described in the fourth paragraph of her will to those nephews of her late husband who were living at the time of his death, *and who survived the said Margaret King.*"

From the decree entered upon that decision, an appeal was taken to the Appellate Division, where it was affirmed, and the case is now in this court for final disposition.

*Lewis C. Platt* for appellants. This legacy was to individuals and not to a class. (1 Jarman on Wills [5th ed.], 269 ; *Matter of Kimberly,* 150 N. Y. 90 ; *Manier* v. *Phelps,* 15 Abb. [N. C.] 123 ; *Matter of Brown,* 154 N. Y. 313 ; *Matter of Russell,* 168 N. Y. 175 ; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 97 ; *Moffet* v. *Elmendorf,* 82 Hun, 475 ; 152 N. Y. 475.)

*William W. Scrugham* for respondents. The legacy given by the fourth paragraph of the will of the testatrix to the nephews and nieces of her late husband, who were living at the death of her said late husband, is a legacy to a class, and the members of that class surviving at the death of the testatrix take the whole of the fund specified in the said paragraph of the testatrix's will. (Redf. on Wills [4th ed.], 175, 186 ; *Barber* v. *Barber,* 3 Myl. & Cr. 697 ; *Moffet* v. *Elmendorf,* 152 N. Y. 475 ; *Mowatt* v. *Carow,* 7 Paige, 328 ; *Downing*

v. *Marshall*, 23 N. Y. 366; *Hoppock* v. *Tupper*, 59 N. Y.
202, 208; *Mount* v. *Mount*, 3 N. Y. Supp. 190; *Hornberger*
v. *Miller*, 28 App. Div. 199; affd., 163 N. Y. 578; *Kerr* v.
*Dougherty*, 59 How. Pr. 44.)

WERNER, J. It has been justly observed by some jurist
possessed of philosophical perception " that no will has a twin
brother." This sage epigram points directly at the difficulties
encountered by courts in trying to construe wills in the light
of authority. These troubles are nowhere more cogently
illustrated than in Mr. Jarman's Standard Treatise on the Law
of Wills, where one may find authority for almost any
proposition which the exigencies of a given case may suggest
or demand. Yet, despite this confusion, which is the natural,
if not the inevitable, outgrowth of efforts to apply the law to
a numberless variety of wills and circumstances, there are
some early rules which have survived to keep this branch of
the law as uniform and certain as may be. One of these
ancient and still existing rules underlies the construction to
be given to the will before us. The broad question is whether
the gift in the fourth clause is to a class, which is represented
by those who survive the testatrix, or whether it is a gift to
designated persons in being at a specified time, the death of
any of whom, prior to the decease of the testatrix, caused a
lapse of the gift *pro tanto*.

The gift is to the nephews and nieces of the deceased hus-
of the testatrix " *who were living at the death* " of said
husband. When this husband died, in 1866, and when this
will was executed, in 1867, there were nine such nephews and
nieces. The testatrix died in 1906, and at that time only four
of the nephews and nieces were alive. The question, more
concretely stated, is whether these four survivors take the
whole gift or whether the shares of the other five lapsed
upon their respective deaths. The answer depends, as we
have said, upon the nature of the gift, and that in turn depends
upon the construction of the fourth clause of this will. If
the gift made by that paragraph was to a class, the survivors

are entitled to the whole; but if it was a gift to designated persons, as distinguished from a class, there was a lapse of the shares intended for those who predeceased the testatrix, and these lapsed shares fall into the residuary estate.

A gift to a class has been defined as " a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number of persons." (1 Jarman on Wills [6th ed.], *232.) This definition has been approved by this court in *Matter of Kimberly* (150 N. Y. 90) and in other later cases.

The exact converse of this definition is well stated by Vice-Chancellor KINDERSLEY in the English case of *Cruse v. Nowell* (4 Drewry, 217): " If there is a bequest to certain persons *nominatim*, or so described as to be fixed at the time of the gift, so that there can be no fluctuation, then, if one of them dies in the lifetime of the testator, his share lapses."

These two antithetical definitions clearly mark the line which must be followed in construing the will now before the court. If the gift were to the nephews and nieces of the deceased husband of the testatrix generally, without designation, restriction or limitation, it would be a gift to a class, because the ultimate number of the beneficiaries would have remained uncertain and incapable of ascertainment until the death of the testatrix. In that event the survivors would, of course, represent the class and take the whole gift. But that, as we have seen, is not this case. The gift of the testatrix was not " to a body of persons uncertain in number at the time of the gift, to be ascertained at some future time," but to certain persons " so described as to be fixed at the time of the gift." The bequest was to the nephews and nieces of the deceased husband of the testatrix *who were living at the time of his death.* That was as distinct a designation of the several beneficiaries as though they had been described *nominatim.* It was as though the

13

testatrix had named nine persons and had added, " I give to these nine nephews and nieces of my late husband, who were living at the time of his death, the proceeds of my New York house, share and share alike." There can be no doubt, we think, that this was a gift to designated persons in being at a specified time which antedated the death of the testatrix, and that there was a lapse of the shares of those who did not survive her.

It would not be difficult, as we have suggested, to find many decided cases either to support or demolish this *a priori* view of the case. To attempt to analyze or reconcile any great number of them would only make " confusion worse confounded."

The other side of the question has been most ably stated by Mr. Justice Miller, in the Appellate Division, in an opinion which frankly discloses the author's hesitation in reaching the conclusion adopted by his court. It is apparent that he reluctantly yielded his own impressions to what he supposed to be the trend of authority, for in one place he argues : " If the testatrix had in mind a class, *i. e.*, the nephews and nieces of her husband, and not particular individuals of the class, so that she might be presumed to have intended to benefit all of the class living at the time of her death, it is difficult to understand why she restricted the number by the clause ' who were living at the death of my late husband.' Had the gift been to ' the nine nephews and nieces of my late husband,' there would have been no doubt according to the cases hereinbefore cited that the gift was to particular individuals ; and it seems to me that, standing alone, the expression used by the testatrix amounts to the same thing." And again, in an earlier paragraph of the opinion the learned justice says : " It would seem that, where the testator fixes a point of time for ascertaining the donees, which is prior to the making of the gift, they should be considered as *personæ designatæ* the same as though the gift were to them *nominatim ;* for, in either case, the description would tend to indicate that the testator had individuals, not a fluctuating class, in mind." To this extent

the argument is precisely in accord with our views, and so
clearly stated that we have been able to do little more than to
paraphrase it.    Certain cases are cited, however, as tending to
establish the contrary rule, and we shall briefly analyze .them
for the purpose of showing that they are so variable in fact
as to render some of them inapplicable as authorities to the
facts before us, and when that is done it will be perceived, we
think, that the few which are really pertinent tend to sustain
our views.

In *Viner* v. *Francis* (2 Cox Eq. 190) the gift was to the
children of a deceased sister, without describing or naming
them, and without any mention of the time when they were to
be ascertained.    This was clearly a gift to a class, and the death
of the testator was the time for ascertaining who comprised
the class, because there was nothing in the will to indicate a
different intent.    (*Campbell* v. *Rawdon*, 18 N. Y. 412.)
In the will before us there is a plain statement fixing the
time when the objects of the gift are to be ascertained, and
that is one of the reasons why the cases, in which there is an
unmistakable gift to a class, are not controlling of the case at
bar.    In *Leigh* v. *Leigh* (17 Beav. 605) the gift was to A. B.
for life, and after his death to " all the present born children
of A. B."    That was held to be a legacy to a class, evidently
upon the theory that it was liable to fluctuation by diminution,
if not by addition, but the short opinion of Sir JOHN ROMILLY,
Master of the Rolls, makes no mention of the much more con-
clusive fact that the will contained no direction as to the time
when the class was to be ascertained, and that is a point which
differentiates that case from this.    Then we are referred to
*Cruse* v. *Nowell* (4 Drewry, 215), from which we have quoted
what we regard as a fair definition of a gift *personæ designatæ*,
where it was held that a gift to take effect upon the death of
A., one of his children, in favor of such of the testator's other
children who should be living at the death of A., was a gift
to a class.    This is another illustration showing that when, as
in that case, the beneficiaries are to be ascertained at some
future time after the testator's death, there are elements of a

gift to a class which we do not find in the case at bar. To the same effect is the case of *Magaw* v. *Field* (48 N. Y. 668) where there was a devise to the children of M. without limitation, under a will made in 1833, where the testator lived until 1864. In *Matter of Smith's Trusts* (L. R. [9 Ch. Div.] 117) the bequest was that the residue of the estate should be equally divided between the five daughters of Samuel and Mary L. This was held to be a bequest *personæ designatæ*, because there was a distinct limitation as to the number of daughters to five, so that after-born daughters could not participate in the gift.

The case which seems to have been most influential in determining the decision in the court below is *Hoppock* v. *Tucker* (59 N. Y. 202), in which it was held that a bequest to J. H. and W., children of A. M., a deceased daughter of the testator, was a gift to a class. The learned judge who wrote the opinion in that case conceded that the clause containing this bequest, taken alone, would be construed as a bequest to the persons named as individuals, but concluded that the general scheme of the will and certain specific provisions thereof, indicated an intent to regard these legatees as members of a class rather than as individuals. The will in that case was long and involved, and even its most salient features are too extended for reproduction here, but the point upon which the question turned was that the will as a whole indicated that the testator intended that the issue of his children, where they took under the will, should take by representation, and that is emphasized by the following sentences from the opinion: " We cannot suppose that the testator intended that these children should take a comparatively small legacy as a class, while the principal legacy was given to them as individuals. If any reason can be imagined for a distinction between these children and the issue of his other children no possible reason can be supposed for prescribing a different rule for these children in taking different legacies. These provisions and the general scheme of the will, that the issue of all his children should take by representation, satisfies me, not

that the omission to prescribe the rule in the eleventh clause was intended to make the bequest personal, but that the language employed was not designed to have that effect, and that the description of the persons as *the* children of his deceased daughter was intended to be controlling." (p. 210.) Quite apart from the reasons given for that decision, there is another, which is not mentioned in the opinion.. In section 29 of the Decedent Estate Law, which was taken from the Revised Statutes, we find that " whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, leaving a child. or other descendant who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendant of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate." (Cons. Laws, ch. 13.) That provision which seems to have been applicable to *Hoppock* v. *Tucker*, is not pertinent here because this will contains no devise or bequest to children of the testatrix. In following *Hoppock* v. *Tucker* the court below sought for indications in the will before us, of an intent to regard the nephews and nieces referred to in the fourth paragraph, as members of a class rather than as individuals. The fact that there are no words of gift to the nephews and nieces was regarded as significant, and the disposition of the second, third and fifth clauses of the will, making provision for the brothers and sister of the testatrix, are cited as affording some evidence that in the fourth clause the testatrix was speaking of a class. We think otherwise. Neither the nature nor the extent of the bequests made in the second and third clauses of the will seem to suggest any reason to support that conclusion.

This discussion of the cases cited by the court below in support of its decision is but a preface to the volume that would have to be written if we should consider, *seriatim*, the many cases set forth in the exhaustive brief of the respondent's counsel. That we shall not attempt, for we deem it sufficient to

say that the authorities cited in the briefs of both counsel for appellant and respondent, when closely examined, will disclose some special reason for classifying them into one or the other of the two groups representing the opposite sides of the question which is decisive of this case.

*Campbell* v. *Rawdon* (*supra*), *Magaw* v. *Field* (*supra*), *Downing* v. *Marshall* (23 N. Y. 366), *Hoppock* v. *Tucker* (*supra*) and *Ferrer* v. *Pyne* (81 N. Y. 281) are examples of gifts to classes as distinguished from individuals; and *Matter of Kimberly* (150 N. Y. 90) and *Herzog* v. *Title Guarantee and Trust Co.* (177 N. Y. 86, 97) are illustrations of gifts to individuals as distinguished from members of a class. Then there is an intermediate line of cases, of which *Matter of Russell* (168 N. Y. 169) is fairly typical, which may be regarded as neutral ground, because they were so obviously decided upon their own special circumstances as to render them authoritative only in identical cases.

Our conclusion, therefore, is that the surviving nephews and nieces take only their own shares; that there was a lapse of the shares of the five who predeceased the testatrix, and that these five shares passed into the residuary estate by virtue of the fifth clause of the will. The order of the Appellate Division and the decree of the surrogate must, therefore, be reversed, with costs to appellant in all courts, and the case remitted to the Surrogate's Court for disposition in accordance with our decision.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Order reversed, etc.