*309 opinion.
Seawell :
By stipulation of the parties our decision is limited to the sole question of whether the trust deed of March 19, 1913, as amended in 1919 and 1920, created one trust or three trusts. The petitioners contend that the amendments made thereto created three separate and distinct trusts, one for each beneficiary of the original trust, and that the income earned from the property held by them under the indenture, as amended, should be taxed on the basis of three trusts instead of one. The respondent adheres to the conclusion he reached when proposing the deficiencies, that but one trust was in existence throughout the taxable years.
The Supreme Court has said that “No general rule can be stated that will determine when a conveyance will carry with it the whole beneficial interest, and when it will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument.” Colton v. Colton, 127 U.S. 300. Whether a trust has been created is largely a question of fact, McCartney v. Ridgway, 160 Ill. 129; 43 N.E. 826, and one alleging the existence of a trust has the burden of proving it by clear and explicit proof in the light of all of the attending circumstances. Allen v. Withrow, 110 U.S. 119; Trubey v. Pease, 240 Ill. 513; 88 N.E. 1005; Hinton v. Pritchard, 107 N.C. 128; 12 S.E. 242. This rule, however, is not so strict as to require that nothing be left to inference or implication. Orr v. Yates, 209 Ill. 222 ; 70 N.E. 731; Osborn v. Rearick, 325 Ill. 259; 156 N.E. 802. It has also been held that to establish a trust three elements must be present, namely, sufficient words to raise it, a definite subject, and an ascertained object. Mills v. Newberry, 112 Ill. 123; 1 N.E. 156; Snyder v. Snyder, 280 Ill. 467; 117 N.E. 465; Carter v. Gibson, 29 Neb. 324; 45 N.W. 634.
The parties are agreed that the indenture of March 19, 1913, created only one trust. Whether more than one trust existed throughout the taxable years depends upon the intent of the amendments made thereto in 1919 and 1920.
The trust deed gave the beneficiaries broad powers respecting modifications to the instrument. The respondent does not question the right of the beneficiaries to alter the indenture in the manner they did, but claims, however, that the amendments are merely directory and to a limited extent operate to segregate the several beneficial interests for bookkeeping purposes.
*310 John P. Wilson, Jr., one of the beneficiaries of the original trust, who signed all of the amendments as such, testified, without contradiction, that the purpose of the amendments was to establish three trusts in' place of the one then in existence. There appears to be ample language in the several amendments to show intent of all the parties thereto to create three separate and distinct trusts. Section “ First ” of the first amendment provided for the division of the trust “ into three separate and equal parts or shares,” each to be designated by the respective names of the beneficiaries. Section “ Second ” required the division “ between said separate trust estates” of additions to the trust estate. In section “Fourth” it was provided that “ Upon the termination of the trusts established ” the “ several trust estates held in trust ” under the indenture should be paid over in the manner prescribed. The second amendment, executed December 1, 1920, substituting new provisions for section “ Third ” of the first modification, provided for the payment of net income each year “ from each of the said separate trusts ” and that any net income from “ each separate trust estate ” not paid out within the year of its receipt should be added to the principal of the “ separate trust estate ” from which it was derived. The final amendment continues all of these provisions in effect, and contains other language evidencing intent to establish and continue the existence of three trusts. Article III (1) provides that the estate shall be kept divided into three equal parts “ each of which shall be held and administered as a separate trust for the benefit respectively of one of the three children of said party of the first part ” and that the trustees shall keep a separate account for “ each of said trusts.”
It is true that other provisions of the instrument, as amended, contain terms usually found in documents establishing a single trust. For instance, in the second paragraph of the first amendment (now the third paragraph of Article III (1)) the words “ trust estate ” are used in connection with provisions for the treatment of additions of property acquired by the trustees under the instrument. The same sentence, however, as already pointed out, provides for the division of any additional property acquired “ between the said separate trust estates.” A similar circumstance appears in Article IV (1) and (2). The terms “trust” and “trust estate” are used in Article V, which was not modified in any respect.
The language referred to, on which the respondent relies to some extent as supporting his view, is evidence of an intention to create a single trust. We may not, however, decide the issue from that alone. All of the provisions of the instrument, as amended, must be considered in the light of all of the attending circumstances. When this is done, the terms referred to as indicating intent to estab *311 lish but one trust must give way to clearer and more certain language showing that the purpose and intent of the amendments was to create three trusts for the one then in existence. The intention is clear and we think sufficient words were used in the amendments to create three separate and distinct trusts.
The case of Johnson v. United States, 65 Ct. Cls. 285; certiorari denied, 278 U.S. 611, is cited by the respondent as being on all fours with this one. In that case no provision was made, as there was here, for holding and administering each part of the trust fund as a trust separate and distinct from the other shares. In the final analysis cases of this sort must stand or fall on the basis of their own peculiar facts. It has been said that “no will has a twin brother.” In re King's Estate, 200 N.Y. 189; 93 N.E. 484. The same is equally true as regards instruments executed with respect to the creation of trusts.
We do not think that the failure of the trustees to make a physical division of the property controls the question. They had ample authority to assign an undivided one-third interest in the whole or any part of the property to the beneficiary of each trust (section “ First ”, amendment June 19, 1919) and had broad powers in holding property belonging to the trusts. Article III (1). Neither do we think the parties in interest should be criticized for pursuing the course they did to create the three trusts. More than one trust may be established by a single instrument, DeVer H. Warner, Trustee, 7 B.T.A. 1292; affd., 26 Fed. (2d) 1023, and we are not aware of any authority against the establishment of more than one trust by amendments to an instrument creating a single trust. The beneficiaries and grantor could have terminated the single trust and, with the same property, created three trusts. The device adopted accomplished the same result by a shorter method. Had the trustees acted as though there were but one trust, they could have by proper proceedings been forced to administer the assets under three separate trusts.
From all the facts we hold that the instrument, as amended, created three taxable trusts, and that for each taxable year the income from all the property held in trust, not distributed or distributable to the beneficiaries, should be taxed on the basis of three separate trusts and three separate returns.
The parties stipulated that in case we so found, orders could be entered finding that there are no deficiencies due from, nor overpay-ments due to, the petitioners respecting income tax liability as trustees under the indenture of March 19, 1913, as amended, for the taxable years. In accordance therewith, orders to that effect will be entered herein.