## FRANCIS LONGWITH

*v.*

## MILTON W. RIGGS *et al.*

*Filed at Springfield November 8, 1887.*

1. APPEAL—*as to the amount involved—decree disposing of a trust fund.* Where the trial court, by its decree, disposes of the entire fund in the hands of a trustee, exceeding in amount $1000, and an appeal is taken to the Appellate Court questioning the application of a part of the fund, which is less than $1000, and the decree is affirmed, and the case is brought to this court by appeal or writ of error, this court will have jurisdiction. The whole amount disposed of by the decree will determine the jurisdiction of this court.

2. WILL—*jurisdiction in chancery to give construction to wills.* The jurisdiction of a court of equity to construe wills is an incident of its general jurisdiction over trusts. And where a testator, by his will, invokes the equitable jurisdiction of the court in relation to a trust fund, and such fund is reduced to possession by the trustee, under the direction of the court, this will also confer, incidentally, jurisdiction to construe the will creating the trust.

3. SAME—*bequest in trust, limited to use of the interest on the fund— encroaching on the principal for support of cestui que trust.* If a testator, by will, gives a share of his estate to a trustee for the use of one of several children, the fund itself may be used by the trustee, under the direction of the court, for the support and maintenance of such child, even though the will contains no direction for maintenance, and although there may be a direction to accumulate income. The general rule is, that the trustee, on his own authority, can not break in upon the principal of the trust fund for maintenance.

4. Where a testator devises funds to a trustee, in trust, to be loaned, and the income to be applied to a child's support during its life, and at its death the same be paid over to the other children of the testator, if there is a clear intention, to be gathered from the whole will, that such child is to have a maintenance, the court may order the trustee to make use of the principal when the income is insufficient, notwithstanding the limitation over.

5. A testator, by will, devised his entire estate to executors, to be sold, one-third to be loaned out, and the interest paid to his widow, and the residue. after the payment of some legacies, was bequeathed to his four children, share and share alike; but the share to one, a feeble-minded daughter, was made in trust for her, she to take only the interest during her life. The testator requested the circuit court to appoint a trustee for such child, "to

take charge of and manage the bequest made to her," "to loan out the fund" and "apply the annual income therefrom, to such child's support," and provided that on her death the estate bequeathed to her be equally divided, share and share alike, among the other three children. The income proving insufficient to support the feeble-minded daughter, the trustee, by the direction and approval of the court, trenched, to some extent, upon the principal, and on her death the court directed the trustee to pay her physician's bill, and the expenses of caring for her during sickness, and her funeral expenses: *Held,* that there was no error in the action of the court.

Writ of Error to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Scott county; the Hon. Cyrus Epler, Judge, presiding.

By the will of Thomas Longwith his estate was devised to executors to be sold,—one-third of the estate to be loaned out and the interest paid to the widow, special legacies to grandchildren named, and the residue was bequeathed to "my four children, Francis, Hulda, Julia and Lavina, share and share alike." The bequest to Lavina, aforesaid, however, is made in trust, she to take only the interest during her natural life, and requests the circuit court to appoint a trustee "to take charge of and manage the bequest made" to Lavina, "to loan out the fund" and "apply the annual income therefrom to the said Lavina's support," trustee to give bond, etc.; that on the widow's death, the one-third of the estate till then on interest for her benefit, was bequeathed "equally, share and share alike, between and among my said four children, Francis, Hulda, Julia and Lavina, or if said Lavina has departed this life, then among the other three, to-wit, Francis, Hulda and Julia;" that at the death of Lavina "the estate herein bequeathed to her shall be divided equally, share and share alike, among my three children, Francis, Hulda and Julia." The widow renounced the provision made for her in the will, and elected to take under the statute.

Shortly after the death of the testator, his three children, Francis, Hulda and Julia, exhibited their bill in the circuit court, against Julia Longwith, widow, and Lavina Longwith,

and therewith a copy of the will. The bill alleged the renunciation of the widow, and that Lavina was a feeble-minded person, and prayed assignment of dower to the widow, and the appointment of a trustee to take charge of the portion provided for said Lavina in said will. Such proceedings were had under this bill as that dower was assigned to the widow, and Milton W. Riggs was appointed "trustee of all the shares of said estate which have or may come to said Lavina under the provisions of said will," under a bond of $4000, and with a direction to the trustee to report to the court, from time to time, his actings as such trustee.

Lavina's share of the estate coming to the hands of the trustee, was $2607.43; and during her lifetime, and covering a period of nearly seven years, the trustee expended in the support of Lavina, and for taxes and commissions, not only all the interest arising from the fund, but $392.93 of the principal.

The final report of the trustee, presented to the court after the death of Lavina, showed in his hands $2214.50 undisposed of. But the report also showed that in the last sickness of Lavina an indebtedness of $103.50 had been incurred for medical attendance and medicines, and that Julia Longwith, a sister of Lavina, claimed a balance due her on account of Lavina, the amount of which was not stated, and that one year's taxes had not been paid; and the trustee asked that the several claimants come into court and prove up their claims, etc.

Evidence was heard in respect of these claims. The bill alleged, and the evidence abundantly showed, that Lavina was a feeble-minded person. Some four years prior to her death, the sister Julia moved to Missouri, and with the consent of the trustee took Lavina with her, and from thence kept and took care of her until Lavina's death. Her personal habits were such as are usually observed in idiotic and feeble-minded persons, and she was afflicted with a discharge from her ear, offensive to those in her presence, and rendering necessary a

daily change in her bedding. Plaintiff in error, although living in the vicinity, and the sister Hulda, neither gave to the care of their unfortunate sister personal attention nor material assistance, and the whole burden of her care and maintenance, save such as the trustee could afford, fell upon the sister Julia, and for this she claimed $250 a year, for four years and nine months, and also for the money expended by her for medical attendance and funeral expenses.

In the final decree, the court approved the trustee's report, with the consent of all the parties in interest, and found that Lavina Longwith was the beneficiary of the trust fund to the extent of the income thereof; that by the will, such fund, on the death of Lavina, should be equally divided between Francis, Hulda and Julia, (and who were the only persons interested therein,) after the payment of such proper unpaid expenses as ought to be charged against it. The decree then allowed the physician's bill of $65.50; allowed Julia Longwith, for doctor's bill and funeral expenses paid by her, $98.65, and for the boarding, care and nursing of Lavina, at the rate of $250 a year, $1187.50, (less $400.98 paid her by the trustee,) equaling $786.50, making the total allowance to Julia $885.15; and after finding that Lavina left no estate out of which the claims could be paid, that she was feeble-minded, and unable to support or care for herself, and that the mother was not a proper person to have her care, and was without means to support her and pay her funeral expenses, decreed the payment of the claims allowed, out of the trust fund, and the distribution of what remained, equally between Francis, Hulda and Julia. Francis Longwith appealed, and the Appellate Court affirmed the decree of the circuit court, and the record is brought here by writ of error.

The error assigned, which was considered by the court, questioned so much of the decree as ordered the trustee to pay Julia Longwith for the care and board of the *cestui que trust* from the principal of the fund in his hands.

Mr. WILLIAM W. BERRY, for the plaintiff in error:

The court erred in the admission of testimony to show that Lavina Longwith was unable to take care of herself, and the amounts due to Julia and others for care and attention bestowed upon her. Unless Lavina resorted to the fund itself, over and above the income thereon, this testimony was wholly immaterial.

If the trust fund itself did not belong to Lavina, then the testimony of some of the witnesses in their favor was incompetent.

The court erred in ordering the trustee to pay the indebtedness of Lavina from the fund itself in his hands after the income had all been expended. The court had no power to interfere with a fund established, under the circumstances, limitations and restrictions of the one under consideration, and divert it to a purpose foreign to that intended by its founder.

Messrs. RIGGS & DEVINE, for the defendants in error:

The amount in controversy was $951.65,—the sum allowed by the circuit court against the fund,—and therefore this court has no jurisdiction. *Railway Co.* v. *Knox,* 110 U. S. 304; *Jenness* v. *National Bank,* id. 52; *Tuitsman* v. *National Bank,* 100 id. 6; *Elgin* v. *Marshall,* 106 id. 578; *Walker* v. *Malin,* 94 Ill. 596; *Piper* v. *Jacobson,* 98 id. 389; *Akin* v. *Cassiday,* 105 id. 22.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Defendants in error, in argument, question the jurisdiction of this court, and contend that the amount in controversy here is less than $1000; that although the fund in the hands of the trustee was $2214.50, plaintiff in error only questions the application, at most, of $951.67 of such fund. The decree of the circuit court disposed of the whole of the fund in the trustee's hands, and the appeal to the Appellate Court brought before that court for review such decree, and when the Appel-

late Court affirmed the decree, and the judgment of affirmance is brought here by writ of error, the amount involved here in controversy is the amount in the trustee's hands subject to disposition under the decree. The amount disposed of by the decree exceeding $1000, the jurisdiction of this court is ample.

The question here presented involves, first, the jurisdiction of a court of chancery, in case of trust, to construe the will creating the trust; and second, the power of such court, in case of express trust, to break in upon the principal of the fund for the maintenance of the *cestui que trust*.

*And first*—The equitable jurisdiction to construe wills is an incident of the general jurisdiction over trusts. (Pomeroy's Eq. sec. 1156.) It is by reason of the jurisdiction of courts of chancery over trusts, that courts having equitable powers, as an incident to that jurisdiction, take cognizance and pass upon the interpretation of wills. (*Chipman* v. *Montgomery*, 63 N. Y. 221.) It is when the court is moved on behalf of an executor, trustee or *cestui que trust*, and to insure a correct administration of the power conferred by a will, that jurisdiction is had to give a construction to a doubtful or disputed clause in a will. The jurisdiction is incidental to that over trusts. *Bailey* v. *Briggs*, 56 N. Y. 407. See *Strubher* v. *Belsey*, 79 Ill. 307; *Whitman* v. *Fisher*, 74 id. 147; Pomeroy's Eq. secs. 351, 352.

But aside from this general doctrine, within which the case at bar clearly falls, the equitable jurisdiction of the court was expressly invoked by the terms of the will itself, so that, upon the filing of the bill, with the will exhibited, the appointment, by the court, of a trustee, the giving of the bond, and reducing of the trust fund to possession, under the direction of the court, by the trustee, and his subsequent reports to the court, the court acquired ample jurisdiction of the persons and the subject matter,—the *cestui que trust* becoming the ward of the court,—and, incidentally, jurisdiction to construe the will creating the trust.

*Secondly* — The principles of law governing this case, by analogy, are those applicable to infants. Although the beneficiary was, no doubt, above the age of eighteen years, she was, by reason of her feeble-minded condition, to all intents an infant. The father, during his lifetime, was liable for her support, and if, by his will, he gave this share of his estate to her absolutely, although under the protection of a trust, there can be no question but that the fund itself might be used, under the direction of the court, for her maintenance and support; and this would be so, although the will contained no direction for maintenance, and although there was a direction to accumulate income. (Perry on Trusts, sec. 615.) The general rule undoubtedly is, that the trustee, on his own authority, can not break in upon the capital of the trust fund for maintenance,—and this rule is for the benefit of the infant. But that the court, in a proper case, possesses such power, is clearly shown by the authorities. Perry on Trusts, secs. 616-618, and cases cited. See, also, *Ex parte Hayes*, 3 DeG. & S. 485; *Walsh* v. *Walsh*, 1 Drewry's Ch. 64.

The same principle has been applied by this court in the case of a married woman. In *Curtiss* v. *Brown*, 29 Ill. 201, it was said: "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. In *Harvey* v. *Harvey*, 2 P. Wms. 21, the court said it 'would do what, in common presumption, the father, if living, would,—nay, ought,—to have done, which was, to provide necessaries for his children.' Trust estates are particularly under the charge and within the jurisdiction of the court of chancery. The most familiar instances in which the court interferes and sets aside some of the express terms of the deed

creating the trust, is in the removal of the trustee for misconduct, and the appointment of another in his stead. But this is as much a violation of the terms of the settlement as is a decree to sell the estate and re-invest it, or to apply the proceeds to the preservation of the estate, or in the relief of the *cestui que trust* from pinching want. From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence that power is vested in the court of chancery." So, too, in the case of infants, by way of anticipation of the time of payment, it was said, in *Rhoads* v. *Rhoads*, 43 Ill. 239: "We have, however, no doubt of the power of a court of chancery, on a proper case being made out, to order the trustee to anticipate the time of payment, under the will, so far as it may be shown to be necessary for the maintenance of the devisees, but its power should extend no further." And in *Voris* v. *Sloan*, 68 Ill. 588, where, unless the court interposed, the trust property would be lost, and after citing *Curtiss* v. *Brown*, the general principle was announced, that in cases of urgent necessity, the trust might be broken in upon, to the perversion and change of the conditions imposed by the trust.

But counsel for plaintiff in error urge, that, here, there is a limitation over, on the termination of a life estate. But if this be conceded, and also that the general rule is, in such case, that no part of the principal of the fund can be expended for maintenance, still the authorities are, that if there is a clear intention, to be gathered from the whole will, that the child is to have a maintenance, the court will order it, although there is a gift over. Perry on Trusts, sec. 619; *Lambert* v. *Parker*, Cooper, (*Temp.* Eldon,) 143. And this brings us to a consideration of the will.

The manifest intention of the testator, gathered from the will itself, was, to bestow the residue of his estate upon his four children, "share and share alike," and it can not be doubted that had Lavina been capable of managing her share of the

estate, as were the other three children, the trust in her favor would not have been declared. The trust was not declared for the benefit of the children of sound mind, but for the protection of a helpless, idiotic child. Lavina's mental incapacity was known to the testator; and while he may have supposed the interest arising from one-sixth of his estate would provide her a support, we can not doubt but that the idea uppermost in the testator's mind was, through the instrumentality of a trust, to secure to his unfortunate and feeble-minded daughter, to the extent of an equal share in his estate with her brother and sisters, that maintenance and support which she was incapable of affording herself. Nothing is observed in the will tending in the slightest degree to show an intent to discriminate against Lavina—to cut her share of the estate down below that taken and enjoyed by her brother and sisters. The one central idea appears to have been to place her share in secure hands, to be managed under the direction of an enlightened court, and thereby guard her against her own weakness, and the avarice and cupidity of others, and to insure her a support as long as she might live. The direction, that upon her death the estate bequeathed to her should go in equal parts to her brother and sisters, we do not regard as controlling, but as subordinate to her right of maintenance, so that at her death they would take what might remain. Had this direction been wholly omitted, Lavina being incapable of making a testamentary devise, whatever of her estate remained at her death would, under the statute, have passed to her heirs; and but for the share the mother, if living, would have taken, Lavina's brother and sisters were her heirs.

If we have rightly discerned the testator's intention, the facts of this case bring it clearly within the principles of the authorities cited. The claims allowed and ordered paid, were for the necessary support and maintenance of the *cestui que trust*. The funeral expenses were necessary expenses.

But if the law had been otherwise than as above announced, the plaintiff in error and his two sisters were, under the statute, (Starr & Curtis' Stat. 1732,) liable for the support of their sister Lavina, if she was a poor person, and unable to earn a livelihood in consequence of bodily or mental infirmity. If we accept the view of plaintiff in error in this case, his sister was such poor person; and as the court had all the parties before it, and also control of the fund, we see no serious objection in the court acting upon the report of the trustee, to avoid a circuity of action, and passing upon and allowing such claims as were for the necessary maintenance of Lavina, and of ordering them paid out of the fund under the control of the court.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*