JEFFERSON ORR *et al.*

*v.*

MARY MARIA YATES *et al.*

*Opinion filed April 20, 1904.*

1. WILLS—*equity has jurisdiction to construe a will creating a trust.*
Equity has jurisdiction to entertain a bill to construe a will, cre-
ating a trust, in order to enable or require the executors or trus-
tees to perform their duties, and having acquired jurisdiction for
that purpose will retain it to construe other provisions of the will.

2. SAME—*not necessary that bill to construe will creating trust be filed
by trustee.* To enable a court of equity to entertain a bill to con-
strue a will creating a trust it is not essential that the bill be filed
by the party charged with executing the trust, but the same may
be filed by the *cestui que trust* or other interested party.

3. SAME—*jurisdiction does not depend upon chancellor's determination
that no valid trust was created.* Jurisdiction of equity to entertain
a bill to construe the trust provision of a will does not depend upon
the conclusion of the chancellor that no valid trust was created.

4. SAME—*all parts of will should be given effect, if possible.* In ascer-
taining the intention of the testator, effect should be given, if pos-
sible, to all parts of the will, so as to render no part inoperative.

5. SAME—*when will creates a determinable fee.* A will devising to
the testator's daughter a remainder "in fee simple,   *   *   *   that
is to say, that if" at the death of the testator's wife the daughter
"shall then be living the fee to said real estate shall vest in her,"
but if the daughter is not living the fee shall vest in her children,
or if she leaves no children, "then, in such case, said fee, if not dis-
posed of" by the daughter, shall vest in the testator's brothers and
sisters, passes a base or determinable fee in vested remainder to
the daughter. (*Friedman* v. *Steiner*, 107 Ill. 125, and *Koeffler* v. *Koeffler*,
185 id. 261, followed.)

6. TRUSTS—*a declaration of trust is good if it is reasonably certain.*
A declaration of trust in a will must be reasonably certain as to
the subject matter of the trust, the beneficiaries, the nature and
quantity of their interests and the manner in which the trust is
to be performed, but it is not essential that every element be so
clearly expressed in detail that nothing is left to implication.

7. SAME—*what does not defeat trust.* The clearly expressed inten-
tion of the testator to create a trust will not be defeated by a
court of equity because a contingency may arise in the future to
render the trust uncertain.

8. SAME—*trust not void because no provision is made for accounting.*
Absence of specific provision for the times and manner of account-

ing by the trustee does not render the trust void, but simply leaves those matters to the courts in case the parties cannot agree.

9. SAME—*when cestui que trust is entitled to all income.* A trust created by will for the purpose of securing the *cestui que trust* a competency entitles the *cestui que trust* to all the income, in the absence of any restriction, and not merely to enough for a bare support.

10. SAME—*provision authorizing trustee to turn over property construed.* A provision authorizing the trustee to turn over the property to the management of the *cestui que trust* for such period as he may see fit, ceasing to be liable for the rents and profits during such period, does not invalidate the trust.

11. SAME—*a provision for trustee's appointment of successor does not invalidate trust.* A provision for the trustee's appointment of his successor in case of sickness, old age or any good cause appearing to him, does not invalidate the trust.

APPEAL from the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

JOSEPH N. CARTER, WILLIAM MUMFORD, and L. T. GRAHAM, for appellants.

VANDEVENTER & WOODS, MATTHEWS & ANDERSON, and A. G. CRAWFORD, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Mary Maria Yates, and Lydia Yates, her mother, the daughter and widow of William H. Yates, who died testate on September 16, 1902, filed their bill in chancery in the circuit court of Pike county against Jefferson Orr, as trustee and executor, and certain devisees in the last will of William H. Yates, to construe his will and grant certain relief therein prayed. The bill alleges that said will, by its first clause, gave the lot and residence where the family resided at the date of testator's death, to his wife, Lydia Yates; that by the second clause she was given one-half of the personal property, and by the third, all of the real estate for life, except the Putz farm. The fourth clause, the construction of which is involved in this litigation, is as follows:

"I devise to my daughter, Mary Maria Yates, one-half of all my personal property, including choses in action, and in fee simple all the real estate that I may die seized of, except the farm known as the Putz farm, which is herein otherwise disposed of. That is to say, that if, at the death of my wife, Lydia Yates, my daughter, Mary Maria Yates, shall then be living, the fee to said real estate shall vest in her, and in the event the said Mary Maria Yates shall not be living but shall leave a living child or children, then the said fee shall vest in said child or children. But in the event that at the death of Lydia Yates, my wife, said Mary Maria Yates shall not be living, and no child or children or descendants of child of said Mary Maria Yates shall be living, then, in such case, said fee, if not disposed of by Mary Maria Yates, shall vest in my brothers and sisters, Catherine Rush, Emma Fisher, Monroe Yates, Edward Yates, Ella M. Orr and Mattie McMahon, in equal parts, and their heirs and assigns, and in the event of the death of either of said brothers or sisters such share shall descend to the heirs of such deceased brother and sister.

"I being desirous of providing a competency for my daughter, Mary Maria Yates, and to create a fund that will not be liable for her debts in any manner whatever, and that will secure to her a living, I devise to Jefferson Orr, trustee, [describing the land,] said above described tract of land constituting what is commonly known and called the Putz farm, to have and to hold in trust for the sole use and benefit of Mary Maria Yates for and during her natural life; and in the event of the death of the said Mary Maria Yates without child or children or descendants of child, then to have and to hold for the sole use and benefit of Lydia Yates, my wife, if she shall be living, during her natural life, and at the death of Lydia Yates, my wife, and Mary Maria Yates, my daughter, (if said Mary Maria Yates dies without child or descendants of child,) the fee to the said last described tract of

land known as the Putz place shall be equally divided between my brothers and sisters and their heirs and assigns, as herein provided for the division of my other real estate herein devised, that is to say, in equal parts.

"I hereby authorize said trustee to turn the management of said estate over to Mary Maria Yates, and Lydia Yates, for any period of time that he may deem best. It is a part and condition of this devise to said trustee that no part of the rents or profits or use of said lands shall be applied to the payment of any judgments against the said Mary Maria Yates or on any debt contracted by her, but the sole object and purpose of said devise is to create a fund that shall be kept free from the said Mary Maria Yates' contracts and judgments against her; that if said trustee shall turn the management of said Putz farm herein devised to the said Mary Maria Yates and Lydia Yates, then said trustee shall not be accountable for the rents and profits in any manner while the same shall be under the management of said Lydia Yates and Mary Maria Yates. I hereby authorize and empower Jefferson Orr, my said trustee, in the event of sickness, failing health, old age, or any other good cause appearing to him, he may appoint some suitable person to execute said trust."

It concludes by nominating Jefferson Orr sole executor of the will and guardian of the daughter, Mary Maria Yates, giving him, as such guardian, full power and authority to manage whatever property she shall be the owner of or to which she is entitled.

The bill further alleges that said pretended last will is ambiguous and uncertain, and that the legal effect of said fourth clause is to vest the life estate in the widow, Lydia Yates, of the lands mentioned in said clause, except the Putz farm, and the remainder in fee absolute in the daughter, and that the limitation over to the brothers and sisters of testator is null and void, as tending to limit the estate in fee given to said daughter; that the

209—15

remaining portion of the fourth clause devising the Putz farm in trust is ambiguous and uncertain, and does not provide what shall become of said trust fund in the event of the death of said appellees without leaving descendants; that the same is in violation of the rule against perpetuities; that no provision is made for the accounting by said trustee or *cestui que trust,* and that for these reasons that portion of said pretended will should be set aside and declared null and void. The prayer is that the will may be construed by the court and that portion of it which creates a trust set aside upon the ground of uncertainty and remoteness; that Mary Maria Yates be declared to be the owner in fee simple of all of the lands mentioned in said pretended will, and that the management and control of said Putz farm may be turned over to her upon her reaching her majority.

To the bill the defendants filed a general and special demurrer, which was overruled and they elected to stand by the same. The cause was submitted for hearing upon the issue so formed, and a final decree rendered adjudging that all of the real estate except the home place and Putz farm was vested by the will in fee simple absolute in the said Mary Maria Yates, subject to the life estate of said Lydia Yates; that the limitation over to the brothers and sisters of the testator is void, because it attempts to limit the fee already given to the daughter after giving her a general power of disposition in fee, and that the trust attempted to be created by the fourth clause in Jefferson Orr of the Putz farm is void for uncertainty, incompleteness and ambiguity, and declaring the same null and void. The decree then adjudges that said Mary Maria Yates is seized of a life estate, by said will, in the Putz farm, and that upon her death the said Lydia Yates, if Mary Maria Yates shall die without child or children or descendants thereof, will be seized of a life estate therein, and in the event that said Mary Maria dies leaving child or children or descendants thereof, the fee sim-

ple in the premises, after the death of both Mary Maria and Lydia Yates, will vest in said child or children or descendants thereof, but in the event of the death of said Mary Maria without child or children or descendants thereof, then, upon her death and the death of said Lydia, the fee simple in said farm will vest in said brothers and sisters. From that decree the defendants prosecute this appeal.

The first assigned error relied upon is, that the circuit court had no jurisdiction to entertain the bill for the reason that it attempts to settle purely legal titles and not to enforce the alleged trust or to construe and determine the complainants' rights thereunder, but denies the existence of any trust, setting up the legal title of the complainants and asking the court to adjudge the same in them. It is admitted by all parties that courts of equity are wanting in jurisdiction in such cases where purely legal titles are involved. (*Harrison* v. *Owsley*, 172 Ill. 629, and cases cited.) It is, however, equally well settled that upon bills by executors or trustees, courts of chancery have power to construe wills creating trusts in order to enable executors or trustees to perform the duties imposed upon them in the administration of the trust, and that having acquired jurisdiction for that purpose they will retain it for the purpose of construing other provisions of the same will. Nor do we understand this latter rule to be confined to cases in which the bill is filed by a party charged with the execution of the trust, but may be invoked by a *cestui que trust* or other party interested. (*Longwith* v. *Riggs*, 123 Ill. 258, and authorities there cited; *Minkler* v. *Simons*, 172 id. 323.) The bill in this case sets out the will of the testator, and alleges that it is ambiguous and uncertain, and that the trust attempted to be created contravenes well established principles of law and is therefore void, but it also avers that the defendants deny such illegality and insist that it is legal and valid. This presented an issue, to be de-

termined by the court, whether, upon the face of the will, a trust was created, and we are unable to see why a trust was not directly involved in that issue. It is true, the chancellor held that there was no valid trust contained in the will; but his jurisdiction could not be made to depend upon that conclusion. If he had held there was a trust and construed the same, there would seem to be no reasonable ground for the contention that his decree was invalid for want of jurisdiction. It is also insisted on this branch of the case that the bill seeks the judgment of the court on a mere future contingency which may never happen; but that is one of the questions to be determined upon a construction of the will. We think the ruling of the chancellor upon this question was correct.

On the merits of the case two questions are presented for decision: First, did the court below err in construing the first paragraph of the fourth clause above set out as vesting the title in fee absolute in the real estate therein mentioned in Mary Maria Yates, subject only to a life estate in her mother; and second, in decreeing the trust provided for in the second paragraph of that clause of the will to be absolutely null and void.

As already shown, the court below held, and the argument of counsel for appellees is, that by the first paragraph Mary Maria Yates is given the fee simple title, with an absolute power of disposition in all the real estate of which the testator died seized, except the Putz farm, and that therefore the subsequent provisions of that paragraph are void, relying upon the rule that where there is a devise of an unlimited power of disposition of an estate in such manner as the devisee may think fit, a limitation over is inoperative and void by reason of its repugnance to the principal devise. *Hamlin* v *United States Express Co.* 107 Ill. 443, is a case recognizing and approving the rule and citing prior decisions of this court to the same effect. Many later decisions follow the rule, and it is not questioned here. On the other

hand, it is earnestly insisted by counsel for appellants, that, properly construed, that paragraph of the will gives to the daughter, Mary Maria Yates, after the life estate given to Lydia Yates by the third clause, the remainder in fee determinable, liable to be defeated by her death in the lifetime of her mother by the executory devise over to any child or children of Mary Maria Yates who may survive her and be living at the time of the death of her mother, and if none should be living, then to the testator's brothers and sisters.

Counsel for appellants are not entirely agreed as to whether the remainder in fee to said Mary Maria Yates is a vested or contingent remainder, of which we will speak later. They do agree, however, that the fee, in either event, is a base or determinable one. There is, perhaps, no rule of construction, as applied to wills, more universal than that "the intention of the testator, to be gathered from the entire will, must govern. * * * So far is this principle carried, that the court say in 3 Wils. 141: 'Cases on wills may guide us to general rules of construction, but unless a case cited be in every respect directly in point and agree in every circumstance, it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills.'" (*Boyd* v. *Strahan*, 36 Ill. 355.) It may be regarded as a judicial maxim that effect should be given to the several parts of a will, so as to render no component part inoperative. The intention of the testator must govern, and that must be ascertained, if possible, from the language of the instrument. The cases in this and other courts laying down and following this rule are almost without number, and need not be cited. It is never departed from, unless to give effect to the manifest intention of the testator would result in the violation of some established rule of law or public policy. It cannot be denied that the construction adopted by the court below and

insisted upon by counsel for appellees in the present
case results in a palpable violation of that rule. It is
based solely upon the first sentence in that paragraph,
and ignores entirely the expression, "that is to say, that
if, at the death of my wife, Lydia Yates, my daughter
Mary Maria Yates shall then be living, the fee to said
real estate shall vest in her," etc. If we take into con-
sideration the entire language of the paragraph we are
forced to the conclusion that the testator intended the
absolute fee simple title should vest in his daughter if
she survived her mother, and if the mother should sur-
vive her, the fee should vest in any child or children of
the daughter who should be living at the death of the
life tenant, Lydia Yates, but if no such child or children
or descendants of such should then be living and the
said Mary Maria Yates should not have disposed of the
property, the fee should vest in his brothers and sisters.
In other words, the construction adopted by the learned
chancellor and contended for by counsel for complain-
ants below renders nugatory all the qualifying language
of the will and defeats the clearly expressed purpose
of the testator, whereas the interpretation placed upon
the entire paragraph by counsel for appellants will give
effect to all the language there used and carry out the
intention of the testator. Therefore, if the latter con-
struction can be adopted without violating established
rules of law, the decision of the court below must be held
erroneous and reversed. It is true, the language, "and
in fee simple all the real estate that I may die seized of,"
etc., standing alone, would vest the absolute fee simple
title in the daughter, and if she had been given such a
title the unqualified power of disposition would neces-
sarily follow, but, following our previous decisions, the
subsequent words must be held to qualify or explain the
expression "fee simple title," so as to give the daugh-
ter but a base or conditional fee, determinable upon her
death before that of her mother. The words "that is to

say," clearly mean the same as if the testator had said, "by this I mean that if," etc., or, "provided if, at the death of my wife," etc.

Perhaps the case most directly in point sustaining this interpretation is *Friedman* v. *Steiner*, 107 Ill. 125. The thirteenth item of the will then under consideration by the court was as follows: "I give and bequeath all the rest and residue of my said estate, real, personal and mixed, of which I shall die seized, possessed or entitled to, unto my beloved wife, Rebecca Steiner, and unto her heirs and assigns forever, to the total exclusion of any and all person or persons whatsoever: *Provided, however*, upon the express condition hereby made by me, in case the said Rebecca Steiner, after my decease, shall die intestate and without leaving her surviving lawful issue, * * * that then and in such event all the rest and residue of my said estate so bequeathed and devised unto her * * * shall at once be converted into money by my executor, and the said money shall be paid over * * * as follows, namely:" (Then follows a disposition of the proceeds.) In the construction placed upon that item, Mr. Justice DICKEY, speaking for the court, said (p. 130): "We recognize the rule of law that 'conditions that are repugnant to the estate to which they are annexed are absolutely void,' yet in the construction of a will we must consider all the words of the will, including all provisos and conditions, for the purpose of ascertaining what estate the testator intended to confer by the granting words of the will; and, weighing the words of the proviso, we think they do qualify the granting words, and do show that the testator did not intend to confer upon his wife a fee simple absolute in this property. Kent says: 'Fee simple is a pure inheritance, clear of any qualification or condition, and it gives the right of succession to all the heirs generally. * * * It is an estate of perpetuity, and confers an unlimited power of alienation.' Such an estate, we think, was here granted

to Mrs. Steiner, except in so far as the same is qualified by the words of the proviso, and we think the words of the proviso do qualify the estate granted and reduce it below that of a fee simple estate; but this reduction below a fee simple absolute extends no farther than the express words of the proviso declare or necessarily imply." And it was there further said: "The interest of Mrs. Steiner in the lands of the estate of her deceased husband is not an estate in fee simple, but is 'an estate in fee determinable.'" · The same doctrine has been repeatedly re-announced in similar cases.

In *Koeffler* v. *Koeffler*, 185 Ill. 261, the will construed gave an estate in fee simple to the natural son of the testator, with the condition that, if he should die before his twenty-fifth year, the testator's brother or his heirs should be the heirs of the son, etc. After quoting at length from the opinion in the *Friedman case* it was held that the interpretation in that case had been recognized in the several cases there cited, and it was said (p. 269): "This rule of interpretation has, in effect, become a rule of property in this State, and in the will under consideration it must be held that the title of the son, Gustav Adolph Koeffler, is a fee determinable, which he can convey and make absolute in the purchaser, but upon his death without issue him surviving the title to all the estate not disposed of would pass to the heirs of his deceased uncle, Carl August Koeffler." See, also, *Frail* v. *Carstairs*, 187 Ill. 310, and *Becker* v. *Becker*, 206 id. 53, citing cases.

Though not material in the decision of this case, the rule undoubtedly is, "if the owner of a determinable fee conveys in fee, the determinable quality of the fee follows the transfer." (4 Kent's Com. p. 10; *Smith* v. *Kimbell*, 153 Ill. 368, cited in *Koeffler* v. *Koeffler, supra; Becker* v. *Becker, supra.*) And in so far as a different doctrine is announced in the *Friedman case* it has not been approved; otherwise it is the law of this State.

Cases have frequently arisen in which, under the same rules of construction, language of itself sufficient to convey an absolute fee simple title has been held to vest but a life estate. In *Healy* v. *Eastlake*, 152 Ill. 424, we said (p. 429): "By the second clause of the will there was devised to the daughter, Alice, all the property, real and personal, 'subject, however, to the conditions hereinafter following.' That the language is sufficiently broad to vest the personal property absolutely and the real estate in fee is not questioned, and unless a limitation is placed thereon by the subsequent clauses of the will, as we have seen may be done, the absolute title passed to the devisee." But we held the effect of the conditions named was to modify the general words of the first paragraph of the second clause of the will, to terminate the estate devised to the daughter, Alice, with her life.

In *Siegwald* v. *Siegwald*, 37 Ill. 430, the will contained this clause: "I give and bequeath unto my beloved wife, Antonia, all my real and personal estate, wheresoever situated, in fee simple and absolute, forever,—that is to say, that my said wife shall have all of the benefits thereof until the expiration of her life, at which time my son, Anton, shall be the only heir of real and personal estate what may be left," and it was held that the wife took only an estate for life in the real estate and remainder in fee to the son. Chief Justice WALKER, delivering the opinion of the court, said (p. 436): "Had the devise contained no language designed to operate as a limitation the will would have been free from all difficulty. The first clause, unaffected by the words of limitation, unquestionably vested a fee simple absolute, and plaintiff in error insists that they are repugnant to the devise, and are therefore inoperative, and leaves an estate in fee in the devisee, and not a life estate. Wills, like all other instruments, must be so construed as to effectuate the intention of the testator, and that intention must be ascertained from the language employed in

the instrument itself, and in arriving at the intention all of the language employed must be considered. It seems to be evident that the testator did not intend to devise to his widow a fee simple absolute, otherwise he would not have added the limiting clause. Had that been the intention, he had fully accomplished the purpose without employing the latter clause, but when he did so it must have been to limit or qualify the estate already devised." And so in the present case. If the testator, William H. Yates, had intended to give his daughter the fee simple absolute he would have stopped with the first sentence of the paragraph under consideration, but having added the limitation we must conclude that he intended to give her a less estate.

In *Bergan* v. *Cahill*, 55 Ill. 160, the will provided as follows: "First, I give, devise and bequeath to my beloved wife, Johanna Morris, all my real estate and personal property; also one cow; all, without reserve, I give unto my beloved wife. N. B.—In case my wife is not supported by her children, so as it may be necessary for her bodily comfort, I give her power to sell and dispose of any or either of the two lots which I now possess and own in Underhill's addition to the city of Peoria; also I hereby declare it my wish that after my wife's decease, whatever property, real or personal, of which she may be possessed or which she may own at the time of her decease, shall be devised and bequeathed to my faithful son, Martin, providing that he pays over unto my daughter, Julia, $100, or an equivalent." And it was held that the intention of the testator was to give the wife but a life estate, and upon her death the fee to the son, subject to a legacy to the daughter. Justice THORNTON, delivering the opinion of the court, there said: "The first clause in the will clearly indicates the intention of the testator to devise all his property to his wife. In the last clause the power to sell upon a contingency, and the declaration of a wish that his faithful son, Martin,

should have whatever property the wife might die possessed of, cast some doubt upon the intention. There is some apparent contradiction. A will, however, should not be rendered void by mere repugnancy. We must gather the intention from the entire instrument. Sometimes a clause posterior in position will denote a subsequent intention. The gift of an estate of inheritance in lands may be restricted by subsequent words."

And so decisions might be cited almost without limit. Generally, the words "fee simple" mean an absolute estate of inheritance, but not necessarily so. A title in fee simple determinable is, in a qualified sense, a fee simple title, and where, as here, the language is followed by a clearly expressed qualification, it must be held that the testator used the first words in that sense.

Counsel for appellees seem to understand that *Friedman* v. *Steiner, supra,* and kindred cases, are not in harmony with the later decisions of this court in *Wolfer* v. *Hemmer,* 144 Ill. 554, *Jones* v. *Port Huron Thresher Co.* 171 id. 502, *Burton* v. *Gagnon,* 180 id. 345, and *Lambe* v. *Drayton,* 182 id. 110. The *Jones case* is clearly distinguishable, and in the *Burton case* the construction of the will under consideration was not concurred in by a majority of the court. When the language used in the wills construed in the other two cases is considered, they are not thought to be in conflict with the earlier cases. Manifestly, they do not, nor were they intended to, overrule *Friedman* v. *Steiner* and the long line of cases following it. We think the doctrine of those cases clearly applicable to this case, and as stated in *Koeffler* v. *Koeffler, supra,* having become a rule of property in this State it should not now be departed from. Moreover, we entertain no doubt that the doctrine is founded in reason and well supported by authority. It cannot be seriously contended, nor do we understand counsel to insist, that the language in the last sentence of the first paragraph, "if not disposed of by Mary Maria Yates," etc., can be con-

strued to give her the unqualified power of disposition.
In fact, those words confer no power whatever.

Our conclusion is, that by the terms of her father's
will Mary Maria Yates took the fee simple title in re-
mainder after the termination of her mother's life estate,
determinable upon her death before that of her mother.
The remainder in fee would seem, upon all the authori-
ties, to be a vested remainder, and not merely contingent.
*Chapin* v. *Nott*, 203 Ill. 341, and cases cited on p. 353.

Did the court err in holding the second paragraph of
the fourth clause void? It seems to be conceded that the
decree was based upon the allegations of the bill that
the trust attempted to be provided for in that paragraph
is "void for uncertainty, incompleteness and ambiguity."
The point is made, however, by counsel for appellees,
that, at most, the trust there provided for is a mere pas-
sive or dry trust, the legal title to the Putz farm vesting
absolutely in Mary Maria Yates by operation of the Stat-
ute of Uses. If the premise of this proposition is correct
the conclusion cannot be denied. We are at loss, how-
ever, to perceive how a valid trust could be held to exist,
under the provisions of the will, without also holding
that active duties are imposed upon the trustee, and the
point need not, therefore, be considered separately. It
may be conceded that the declaration of a trust must be
reasonably certain in its material terms, and that this
requisite of certainty includes, first, the subject matter
or property embraced within the trust; second, the bene-
ficiaries or persons in whose behalf the trust is created;
third, the nature and quantity of interests which they
are to have; and fourth, the manner in which the trust
is to be performed. If the language is so vague, general
or equivocal that any one of these necessary elements of
the trust is left in real uncertainty, the trust must fail;
or if any one of the three things necessary to constitute
a trust is wanting,—that is, first, sufficient words to raise
it; second, a definite subject; and third, a certain or as-

certained object,—the trust will fail. It is not practicable to adopt any specific definition of a trust which can be applied to all cases. Many attempted definitions are to be found in the text books and decided cases, but it is unimportant here to accept one rather than another. All must agree that it is not necessary to the validity of a trust that every element necessary to constitute it must be so clearly expressed in detail in the instrument creating it that nothing can be left to inference or implication. No particular form or words are necessary, but wherever an intention to create a trust can be fairly collected from the language of the instrument and the terms employed, such intention will be supported by the courts. *Fisher* v. *Fields*, 10 Johns. 494; 2 Story's Eq. Jur. sec. 980; *Hagan* v. *Varney*, 147 Ill. 281.

It is conceded by counsel for the appellees that the requisites of certainty as to the subject matter of the trust and the beneficiaries are in this will sufficiently expressed, but their contention is that there is a failure to show the nature and quality of interest which the beneficiaries under the will are to receive, and that the manner in which the trust is to be executed by the trustee does not definitely appear from the language employed. The subject matter or property embraced in the trust is the Putz farm. The beneficiary is Mary Maria Yates, or, in case of her death without child or children or descendants of child, Lydia Yates.

As will be seen from the foregoing statement, the ambiguity, uncertainty and indefiniteness averred in the bill are, first, that the will does not provide what shall become of the said trust fund in the event of the death of Mary Maria Yates without leaving descendants; second, that it is void, as violating the rule against perpetuities, no point, however, being attempted to be made on this allegation; third, that no provision is made for the accounting by the trustee to his *cestui que trust;* and fourth, that there is no provision as to when the trustee

shall turn over the trust fund to the *cestui que trust* or to anyone else.

The declared purpose of the testator in creating the trust is to provide a competency for his daughter,—that is, not merely a bare living, but a sufficiency for her support, maintenance and education, according to her degree and position in life,—and that such fund shall not be liable for her debts in any manner whatever. The duration of the trust as first provided is expressly made during the natural life of the daughter, but if she dies without descendants, then during the life of her mother, Lydia Yates. Upon the death of the daughter leaving no descendants, and the death of her mother, the trust will terminate and the fee, by the express language of the will, vest in the brothers and sisters. The only uncertainty is as to what shall be done with the trust property in case Mary Maria Yates dies leaving issue. Will it go to such issue in fee, or will it fall back into the estate as intestate property and descend to the heirs of William H. Yates? Our opinion is that it will vest in the issue of Mary Maria Yates. That seems to be the fair inference from the language used. If she dies without issue, then the trust continues during the life of Lydia Yates and the fee vests in the brothers and sisters. If Mary Maria Yates dies leaving issue, that is clearly the end of the trust, and it seems to be the intention of the testator that the fee shall vest in her issue. This construction is in harmony with the rule of law that where a party disposes of his estate the presumption is that he intended to dispose of all of it, and courts will so construe the will as to leave no part of the estate as intestate property. But suppose this view cannot be sustained; must the entire trust fail? We think not. The duration of the trust is now definite and may never become uncertain. Certainly, a court will not defeat the clearly expressed intention of a testator because a contingency may arise in the future which will render the

trust uncertain. But it may be possible that the question as to where the fee goes in case Mary Maria Yates dies leaving issue cannot finally be determined upon this record. In case William H. Yates left a son or other heirs who were not made parties to this bill, they would be entitled to be heard on the question as to whether the Putz farm shall vest in the issue of Mary Maria Yates or descend to all of the heirs of William H. Yates.

The fact that the times and manner of accounting for the rents and profits of the trust estate are not fixed can not render the trust void. The law will compel the trustee to render accounts in proper manner and at proper times. The absence of specific directions as to when and in what manner the trustee shall render his accounts simply leaves that matter to be determined by construction. If the trustee and *cestui que trust* disagree on that subject, the courts may be resorted to for a settlement of the differences. In such a case, the parties, and, if necessary, the court, would be compelled to take into consideration the nature of the property, how and when the rents and profits will probably accrue, and all other facts and circumstances affecting the question. 2 Perry on Trusts, secs. 821-843; *Lehman* v. *Rothbarth*, 159 Ill. 270; *Carpenter* v. *Davis*, 72 id. 14; *Hale* v. *Hale*, 125 id. 399.

It is clearly the duty of the trustee to turn over all the rents and profits of the farm as they accrue. The trustee has nothing whatever to do with the question as to what is reasonably necessary for the support and maintenance of the *cestui que trust*. The trust is not merely to provide her a bare support. Her father provides this trust in order to secure her a competency,— that is, a sufficiency for her support, etc. She is therefore entitled to all of the income arising from the farm set apart by her father for her. That he intended her to have it all is further manifested by the provision authorizing the trustee to turn the property over to her and her mother for such period as he may see fit, he ceasing to

be liable for the rents during such period. We are unable to concur in the view that this provision is contrary to the idea of a trust. It simply vests in the trustee a discretion to rent the property to others, or let the daughter and her mother use and enjoy it for such period as he may choose. Such a discretion is not inconsistent with his duties as trustee. (*Rife* v. *Geyer*, 98 Am. Dec. 315; 59 Pa. St. 393.) Whom the rents and profits shall go to at the death of Mary Maria Yates is sufficiently disposed of by what has already been said. These rents and profits do not accumulate in the hands of the trustee, but are paid over to the *cestui que trust*, or her guardian during her minority, as they are received. How they shall be used during her minority would be for the guardian to determine, and after she becomes of age she can do as she pleases with her own. If rents and profits have accrued and have not been collected and paid over at the time of her death, they would go to her administrator or executor, like any other property of which she may die seized. The fund created, which is not to be liable for her debts, does not refer to the rents and profits after they are paid to her, but does refer to the farm from which they arise, to the rents and profits before they are paid into the hands of the trustee and also while they are in his hands.

The point that the fact that the will authorizes the trustee, in the event of his sickness, old age, or for any other good cause appearing to him, to appoint his successor, renders the trust void, is clearly without force. His action in that regard, if arbitrarily or unwisely exercised, would be controlled by the courts upon application of the *cestui que trust*, even without this provision. There can be no doubt that the court would have the power to appoint some suitable person to execute the trust if for any reason Jefferson Orr became incapable of doing so.

Conceding that the trust provisions of this will are not altogether explicit and absolutely certain, yet these

uncertainties are such as a court of equity will aid by construction, and not such as will defeat the intention of the testator to provide in his own way for his daughter.

We are of the opinion that it was error in the court below to hold the trust absolutely null and void. It follows that so much of the decree as finds a life estate in Mary Maria Yates is also erroneous. The decree of the circuit court will therefore be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.      *Reversed and remanded.*